**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Wilson Fernely URREGO–LINARES, Defendant–Appellant.**

No. 88–5646.

United States Court of Appeals, Fourth Circuit.

Argued June 9, 1989.

Decided July 20, 1989.

George Alan DuBois, Jr., Asst. Federal Public Defender (William E. Martin, Federal Public Defender, on brief) for defendant-appellant.

Sidney M. Glazer (Margaret P. Currin, U.S. Atty., Christine W. Dean, Asst. U.S. Atty., and Thomas E. Booth, Dept. of Justice, on brief) for plaintiff-appellee.

Before PHILLIPS and WILKINS, Circuit Judges, and WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.

WILKINS, Circuit Judge:

Wilson Urrego–Linares appeals his convictions and sentences for possession with intent to distribute cocaine and interstate travel in aid of racketeering. 21 U.S.C.A. § 841(a)(1) (West 1981); 18 U.S.C.A. § 1952 (West Supp.1989). Since the offenses were committed after November 1, 1987, the sentences were governed by the Sentencing Reform Act of 1984, 18 U.S.C.A. §§ 3551, et seq. (West 1985 & Supp.1989), and the sentencing guidelines promulgated by the United States Sentencing Commission.

Urrego contends that the district court erred in not reducing his guideline sentencing range by 2 levels for acceptance of responsibility. In support of this contention he argues that he was entitled to application of this mitigating factor since the government did not prove by clear and convincing evidence that he was not entitled to it. We reject this contention and hold that a defendant seeking the application of a mitigating factor to a sentencing range determination has the burden of convincing the court of its applicability by a preponderance or greater weight of the evidence.

Urrego also challenges his conviction on the ground that the district court abused its discretion in allowing into evidence statements of a co-conspirator uttered after Urrego's arrest and after the seizure of the cocaine which was the object of the conspiracy. Finding no error, we affirm.

I.

In February 1988, while traveling by vehicle on Interstate 95 in North Carolina, Urrego and Carlos Restrepo–Garcia were stopped by law enforcement officers. A search of their vehicle uncovered four kilograms of cocaine. After they were arrested, Restrepo agreed to cooperate with the government. He informed authorities that he and Urrego were traveling to New York to sell the cocaine to Wilson Nelson Rivera. At the government's request he placed monitored telephone calls to Rivera in New York.

During the first conversation Restrepo told Rivera that Urrego had become ill and could not complete the trip. This scheme, apparently designed to lure Rivera to North Carolina, was unsuccessful for Rivera advised Restrepo to drive to New York alone if Urrego remained too ill to travel. Also during the telephone conversation Rivera told Restrepo that he had spoken previously with Urrego and had received conflicting reports on how many "pieces" Urrego possessed. Following a second telephone conversation Restrepo traveled to New York and met with Rivera, purportedly for the delivery of the four kilograms of cocaine. At this meeting Rivera was arrested and a card bearing the name of Urrego's mother was seized from Rivera's wallet.

At Urrego's trial the district court allowed Restrepo to testify concerning the substance of his telephone conversations with Rivera. The court ruled that the statements were admissible as those of a co-conspirator under Federal Rule of Evidence 801(d)(2)(E).

II.

The offenses for which Urrego was convicted resulted in an offense level of 30. In addition to correctly stating this, the presentence report recommended that this base offense level be enhanced 2 levels on the basis that Urrego occupied a supervisory role in the criminal activity. Guideline § 3B1.1(c). Urrego objected to this proposed increase and also challenged the presentence recommendation that he not be allowed a 2–level reduction for acceptance of responsibility. See Guideline § 3E1.1(a). At the sentencing hearing, the district court first determined that a 2–level increase for a supervisory role was not warranted. It then found that Urrego was not entitled to the 2–level reduction for accepting responsibility. Urrego's resulting offense level of 30 provided for a sentencing

range of 97–121 months and the court sentenced him to 97 months.

Urrego challenges the denial of a 2–level reduction in several respects. He first argues that the district court improperly relied on the fact that he refused to implicate his mother in drug trafficking as the basis for denying him the reduction. He also argues that the district court improperly relied on alleged discrepancies between his post-trial statements and the testimony of his co-conspirator Restrepo. In the alternative he contends that he is at least entitled to a resentencing hearing because the record is unclear as to the standard of proof used by the district court in resolving this disputed fact and on whose shoulders the district court placed the ultimate burden. In this regard he erroneously contends that under the Sentencing Guidelines the standard of proof is one of clear and convincing evidence and that the burden of proof is always on the government, not only to prove the application of an aggravating factor but also to prove that a mitigating factor does not apply.

### III.

Guideline § 6A1.3(a) states:

In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

The Sentencing Guidelines do not, however, specifically address the subject of standards of proof or which party should bear the burden. The Sentencing Reform Act is likewise silent on this issue and leaves to the courts the responsibility of fashioning appropriate rules.[1] Unquestionably, the guidelines do not themselves mandate a change in existing law; nor is there good reason to conclude that use of the guidelines to structure sentencing discretion necessitates any change.

### A.

Prior to the implementation of sentencing guidelines in the federal system, the Supreme Court stated in *McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 2418, 91 L.Ed.2d 67 (1986), that "[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all." The Court in *McMillan* specifically rejected the assertion that a sentencing court must apply a clear and convincing standard to factual findings involved in the sentencing process. Instead, the Court ruled that, as prescribed by Pennsylvania statute, due process is satisfied by application of a preponderance standard to factual findings made by a court during sentencing.

Urrego contends that even if a more rigorous standard is not constitutionally required, this court should nevertheless adopt a clear and convincing standard on fairness grounds. He points out that some courts previously employed a clear and convincing standard, *see United States v. Fatico*, 458 F.Supp. 388, 408–12, (E.D.N.Y. 1978), *aff'd*, 603 F.2d 1053 (2d Cir.1979), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980), and that at least one court has suggested that a clear and convincing standard should be applied in guidelines sentencing cases. *See United States v. Johnson*, 682 F.Supp. 1033 (W.D.

---

1. The Supplementary Report on the Initial Sentencing Guidelines and Policy Statements provides:

With respect to sentencing issues that are genuinely disputed, the Commission chose simply to emphasize the importance of accuracy and fairness. Especially in light of questions that have been raised regarding the Commission's power to prescribe enforceable rules for dispute resolution, most of the procedural details are left for resolution by the sentencing court in light of the nature and importance of the particular issue and the context in which it arises. Existing precedent will provide some guidance; more extensive precedent will develop as the issues become more sharply defined in context.

Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 46–47 (June 18, 1987). The Commission specifically left for court resolution such issues as "[w]hich party bears the burden of persuasion?" and "[w]hat is the weight of the burden of persuasion." *Id.* at 47 n. 79.

Mo.1988), *aff'd sub nom. United States v. Mistretta,* 488 U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). On the other hand, other courts have indicated that even a preponderance standard is not constitutionally mandated or otherwise required. *See United States v. Restrepo,* 832 F.2d 146, 149–50 (11th Cir.1987) (government must establish "some reliable proof" for presentence statements); *United States v. Hill,* 688 F.2d 18, 20 (6th Cir.) (defendant must show information in presentence report was "materially false"), *cert. denied,* 459 U.S. 1074, 103 S.Ct. 498, 74 L.Ed.2d 638 (1982); *United States v. Marshall,* 519 F.Supp. 751, 754 (E.D.Wis.1981) (information relied on must have "sufficient indicia of reliability"), *aff'd,* 719 F.2d 887 (7th Cir. 1983).

We discern no reason to require application of a standard greater than approved by *McMillan.* The Court there noted that "criminal sentencing takes place only after a defendant has been adjudged guilty beyond a reasonable doubt." 477 U.S. at 92 n. 8, 106 S.Ct. at 2419 n. 8. And more importantly, the Court stated that the adoption of a clear and convincing standard of proof "would significantly alter criminal sentencing," *id.,* a change which the Court determined would be unnecessary and burdensome. Recently, courts examining the appropriate standard of proof under the guidelines have generally agreed that a preponderance standard is the proper measure. *See United States v. Wright,* 873 F.2d 437 (1st Cir.1989); *United States v. Clark,* 1989 WL 87116, 1989 U.S. Dist. Lexis 5347, 3–4, No. 88–60(1), (N.D.Ind. May 10, 1989); *United States v. Landry,* 709 F.Supp. 908 (D.Minn.1989); *United States v. Kikumura,* 706 F.Supp. 331, 345 (D.N.J. 1989); *United States v. Dolan,* 701 F.Supp. 138, 140 (E.D.Tenn.1988); *United States v. Silverman,* 692 F.Supp. 788, 791 (S.D.Ohio 1988).

Indeed, before guideline sentencing a court intuitively fashioned what it considered an appropriate sentence and did so without any obligation to give reasons and many times without ultimate resolution of disputed facts. Fairness to a defendant is substantially increased under guideline sentencing with application of a preponderance of the evidence standard, for if a court is considering applying an aggravating factor which will have the effect of increasing the sentence, the court must afford a defendant the opportunity to oppose and specifically address its application. And, before it may refuse to apply a mitigating factor which a defendant has raised, it must first give the defendant an opportunity to present evidence supporting its application and, if rejected, make a specific finding on the record.

**B.**

Urrego also contends that the government should bear the burden of proof on all issues at sentencing whether they would potentially increase or decrease the sentence. *See Dolan,* 701 F.Supp. 138 (E.D. Tenn.1988). And he argues that he is entitled to another hearing since it is impossible to know on which party the court placed the burden of proof at sentencing.

Urrego generally relies on pre-guidelines cases to support his claim that the government should be required to bear the burden of proof regarding disputed matters contained in the presentence report. *United States v. Lee,* 818 F.2d 1052 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987); *Restrepo,* 832 F.2d 146 (11th Cir.1987). These cases offer little support, for in each the government appropriately was required to bear the burden because the disputed material contained in the presentence report had the potential effect of increasing the defendant's sentence.

▆ Here, the guideline in question involved a potential decrease in the offense level which would have had the effect of lowering Urrego's ultimate sentencing range.[2] In these circumstances, we hold

---

**2.** Without application of acceptance of responsibility, Guideline § 3E1.1(a), Urrego's offense level was 30 producing a sentencing range of 97–121 months. A 2–level reduction for acceptance of responsibility would have produced a sentencing range of 78–97 months. Had the

that the defendant has the burden of establishing by a preponderance of the evidence the applicability of the mitigating factor in question. We therefore reject the position advanced by Urrego and expressed by the district court in *Dolan*.

■ A defendant's guilty plea or conviction establishes a base offense level and a corresponding sentencing range. As the Court noted in *McMillan*, at this stage of the proceedings the defendant's guilt has already been established beyond a reasonable doubt. If the defendant advances a mitigating factor which, if accepted by the court, would lower the sentencing range and potentially reduce the ultimate sentence, the defendant should bear the burden of proof to establish the mitigating factor(s) by a preponderance. *Clark*, 1989 U.S. Dist. Lexis 5347 at 4–5. However, if the government seeks to enhance the sentencing range and potentially increase the ultimate sentence, it should bear the burden of proof. Such a scheme is entirely consistent with the directives of the Supreme Court in *McMillan* and with due process requirements.

■ Upon conviction a defendant is entitled only to have his sentence correctly determined in accordance with the applicable law and based upon reliable evidence. *See Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). A defendant must be afforded an opportunity to contest assertions by the government that are designed to enhance his sentence, and to offer evidence in support of factors that may warrant a reduced sentence. However, neither concerns of procedural due process nor any other good reason suggest that a defendant should be able to put the burden on the government to prove that the defendant should not receive any particular mitigating adjustment.

## IV.

■ Although the court did not announce that it was applying a preponderance of the evidence test, it is clear that Urrego failed to meet this burden. The court carefully weighed the evidence presented on the issue of acceptance of responsibility and concluded that a 2–level reduction was not warranted.

After conviction at the hands of a jury Urrego contended that he immediately contacted the investigating officers and volunteered to fully cooperate. In his post-trial statement to a probation officer Urrego conceded involvement in cocaine trafficking and apparently offered to testify for the government in subsequent proceedings. However, in the presentence report, the probation officer recommended that Urrego not be given the 2–level adjustment. This recommendation was evidently determined due to the fact that Urrego had minimized his mother's role in the operation and because the probation officer felt that Urrego's statement of the extent of his involvement conflicted with the testimony of the chief government witness.

At the sentencing hearing the district court found that Urrego was attempting "to minimize his involvement much more than it would seem the evidence indicates." The court also found that Urrego was "maybe loose with the truth in order to … gain as much as he can." Regarding Urrego's denial of the extent of his mother's involvement, the district court concluded that it "could forgive [that] because of his youth and his desire to protect his mother." Ultimately, the court held that an adjustment was not warranted.

Recently, in *United States v. White*, 875 F.2d 427, 430 (4th Cir.1989), this court recognized that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," Application Note 5, Guideline § 3E1.1, and held the determination of whether a defendant is entitled to an acceptance of responsibility adjustment is a factual issue reviewable under a clearly erroneous standard. Apparently, the district court did not specifically consider "the timeliness of the defen-

court stated that regardless of how it ultimately resolved the issue regarding acceptance of responsibility the sentence would be 97 months,

review of this issue would have been unnecessary. *See United States v. White*, 875 F.2d 427, 432 (4th Cir.1989).

dant's conduct in manifesting the acceptance of responsibility." Application Note 1(g), Commentary to Guideline § 3E1.1. Even without consideration of this factor, we hold that the district court did not err in refusing to decrease Urrego's sentencing range by 2 levels.

## V.

 Urrego's contention that the district court abused its discretion in admitting the statements of his co-conspirator is likewise without merit. He argues that since he and Restrepo already had been apprehended and the cocaine seized, the statements made by Rivera during the monitored telephone conversations were outside of the course of the conspiracy.

The fact that Urrego and one of his co-conspirators were arrested did not necessarily mean that the conspiracy was terminated. *United States v. Grubb,* 527 F.2d 1107, 1109 (4th Cir.1975). There was ample evidence for the district court to conclude that Rivera's statements were made in the course of and in furtherance of the conspiracy.

AFFIRMED.