**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James Edward HARRIS, Defendant–Appellant.**

No. 89–5511.

United States Court of Appeals, Fourth Circuit.

Argued June 9, 1989.

Decided Aug. 22, 1989.

George Alan Dubois, Jr., Asst. Federal Public Defender (William E. Martin, Federal Public Defender on brief) for defendant-appellant.

Andrew Levchuk (Margaret P. Curri, U.S. Atty., Linda Kaye Teal, Asst. U.S. Atty., Karen Skrivseth, Dept. of Justice, on brief) for plaintiff-appellee.

Before CHAPMAN and WILKINSON, Circuit Judges, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.

SPENCER, District Judge:

Appellant James Edward Harris ("Harris") challenges the district court's refusal to grant him a two-step offense level reduction pursuant to Sentencing Guideline § 3E1.1(a) based on his purported acceptance of responsibility for his criminal conduct. Harris also contends that even if the trial court did not err in declining to grant him an offense level reduction, he is entitled to be resentenced because the district court failed to articulate the standard and burden of proof that should be applied in resolving this sentencing dispute. For the reasons stated below, we affirm the sentence imposed by the district court.

## I.

Harris was charged in a two-count indictment with conspiracy to defraud the government by obtaining payment through false claims in violation of 18 U.S.C. § 286 (1985), and with aiding and abetting the filing of a false claim against the United States in violation of 18 U.S.C. §§ 287 and 2 (1985).

The scheme Harris engineered involved filing false tax returns. Harris and others fabricated or obtained false birth certificates and motor vehicle cards, and false Form W–2 Wage and Tax statements in the names of various fictitious individuals. Harris and his co-conspirators then prepared false tax returns based on this fictitious information and submitted the documents to H & R Block under its "Rapid Refund" program in order to obtain tax refunds. The scheme involved 40 individual tax returns which sought $69,736.00 in refunds.

Pursuant to a plea agreement, Harris pled guilty to the conspiracy charge in count one of the second superseding indictment and the government moved for dismissal of count two. The plea agreement provided that Harris would cooperate with the government and testify fully and truthfully in any proceeding regarding crimes of which he had knowledge. The government in turn promised that it would not oppose imposition of the minimum sentence within the applicable guideline range and not recommend an upward departure. The government agreed to inform the court at Harris' sentencing of the nature and extent of his cooperation, including whether it believed Harris had accepted responsibility for his illegal conduct. The government explicitly declined, however, to stipulate that Harris had accepted responsibility for his illegal conduct.

Because the offense committed occurred after November 1, 1987, Harris was sentenced pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551–86 (1985 & Supp. 1989). The presentence report determined an appropriate sentencing guideline range of 51 to 63 months imprisonment based on an offense level of 17 and a criminal history at category VI. The report recommended no downward adjustment for acceptance of responsibility. The report stated that even though Harris admitted his involvement in the scheme, he failed to show any remorse for his actions.

Harris objected to the presentence report recommendation that he not receive a two-step reduction for acceptance of responsibility. He testified at the sentencing hearing that he was sorry for what he had done and that he did not believe it was right. He explained that his perceived lack of candor during the interviews with government agents arose from his reluctance to implicate his brother in the scheme.

IRS agent Jim Burgess interviewed Harris on two occasions. He testified that although Harris admitted preparing false documents, he felt Harris was evasive when he responded to questions. As a result of Harris' obliquity, an interview which normally should have taken approxi-

mately two hours instead lasted two days. Burgess concluded that Harris "did not show any remorse at all." Probation officer Robert Singleton also testified Harris did not express any remorse, that Harris reluctantly admitted his culpability, and that Harris made this admission only when asked directly. Singleton described Harris as manipulative. Singleton therefore recommended that the court deny the reduction for acceptance of responsibility.

The district court overruled Harris' objection to the presentence report and found that Harris had not clearly shown acceptance of responsibility. The court concluded that based on Harris' demeanor and conduct during the sentencing proceeding, he had "not seen a clearer case" of a defendant who had not accepted responsibility for his actions. The district court sentenced Harris to a term of imprisonment of 60 months and a three year term of supervised release.

## II.

Guideline § 3E1.1(a) provides that a sentencing court may reduce the offense level by two levels "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct...." In determining whether a defendant qualifies for a two-step offense level reduction, the Commentary to Guideline § 3E1.1 sets forth a nonexclusive list of factors a sentencing court may consider. Among the considerations are:

(a) voluntary termination or withdrawal from criminal conduct or associations;

(b) voluntary payment of restitution prior to adjudication of guilt;

(c) voluntary and truthful admission to authorities of involvement in the offense and related conduct;

(d) voluntary surrender to authorities promptly after commission of the offense;

(e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(f) voluntary resignation from the office or position held during the commission of the offense; and

(g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

■ Harris contends that the district court erred when it denied a two-level downward adjustment. He argues that the trial judge mistakenly relied more heavily on subjective factors, such as his demeanor and ostensible lack of contrition. He claims the court ignored the objective evidence of contrition, such as his guilty plea, his cooperation with investigative agents in explaining the scheme and the role he played in it, and his acknowledgment that he did wrong.

The determination whether a defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility" is a factual issue, and the district court's decision not to reduce the offense level will not be disturbed unless clearly erroneous. *United States v. White*, 875 F.2d 427, 431 (4th Cir.1989). The primary policy underlying this deferential standard of review is self-evident. A defendant's credibility and demeanor play a crucial role in evaluating whether he is genuinely contrite and has accepted responsibility and the sentencing judge is in a unique position to evaluate these factors. *Id.* at 430–31. *See* 18 U.S.C. § 3742(e) (1985 & Supp. 1989); Guideline § 3E1.1, Application Note 5.

■ Harris concedes that a guilty plea does not automatically entitle a defendant to the two-step reduction. Although a guilty plea may provide some evidence of contrition, it does not, standing alone, entitle a defendant to a reduction as a matter of right. *White*, 875 F.2d at 431. *See* Guideline § 3E1.1(c), Application Note 3. Harris argues that his guilty plea, combined with his cooperation and admission that he did wrong, all so-called objective considerations, entitled him to the reduction. Harris' argument is misguided.

■ A district court is not obligated to grant an unrepentant criminal a two-step

reduction in return for grudgingly cooperating with authorities or merely going through the motions of contrition. A defendant's decision to plead guilty and cooperate with authorities may be motivated by factors other than contrition. For example, a favorable plea agreement may be in the best interest of the defendant or a defendant may simply recognize that the evidence of guilt is overwhelming. *See United States v. Roberson*, 872 F.2d 597, 610 (5th Cir.1989) (defendant's guilty plea may be motivated by favorable plea agreement).

■ In deciding whether a defendant is entitled to a reduction for acceptance of responsibility, a district court must necessarily weigh a multitude of factors, both objective and subjective, and make subjective determinations when called on to do so. Although the Commentary to Guideline § 3E1.1 was manifestly designed to give courts some guidance by enumerating objective indicia of contrition, a sentencing court cannot be expected to apply the reduction criteria in a mathematical fashion.

As this court explained in *White:*

Sentencing judges examining the possible application of the acceptance of responsibility reduction must necessarily make credibility determinations surrounding the testimony and statements of defendants they are sentencing.... [E]ven where a defendant performs one or more of [the acts enumerated in Application Note 1], such as making voluntary restitution to a victim, a court may still reject application of this section. In the final analysis, it is the district judge who must evaluate the acts and statements of defendant and the conclusion drawn after

this evaluation should not be set aside unless clearly erroneous.

*White,* 875 F.2d at 431.

■ The record amply supports the trial court's finding that Harris did not sincerely accept responsibility. The government agents testified that Harris was less than cooperative and candid during their questioning. *See United States v. Barreto*, 871 F.2d 511, 513 (5th Cir.1989) (lack of candor with probation officer during questioning clearly demonstrated the inadequacy of the defendant's acceptance of responsibility). Moreover, Harris did not voluntarily surrender to authorities in a timely fashion, but in fact eluded arrest several times.[1] These actions are not consistent with genuine contrition. Perhaps most significantly, the trial judge, who had an opportunity to evaluate Harris' demeanor throughout the proceedings, made the credibility determination that he had not seen a clearer case of a defendant who had not in fact accepted responsibility. We believe the district court's decision was the correct one, was supported by the evidence, and was not clearly erroneous.

### III.

■ The district court failed to announce either the appropriate standard or burden of proof to be applied in resolving Harris' challenge to the presentence report's recommendation. Harris argues that the burden should rest on the government to show by clear and convincing evidence that he was not entitled to the reduction. He also asserts that because the trial court failed to articulate either the standard or the burden of proof, he is entitled to be resentenced. We reject both contentions and hold that Harris, as the party

---

1. The plea agreement contained a stipulation that Harris willfully obstructed or impeded the proceedings. This stipulation presumably resulted from the fact that Harris evaded arrest on numerous occasions prior to his ultimate arrest. The government argues, and correctly so, that Guideline § 3E1.1(a) is not applicable to a defendant who has obstructed justice. *See United States v. Roberson*, 872 F.2d 597, 610 (5th Cir.1989); Application Note 4. The district court's decision to deny the downward adjustment, however, was based not on Harris' ob- struction of justice but rather his demeanor and credibility. Therefore, we decline to base our affirmance of the district court's decision on this ground. We do note that the consideration of whether a defendant voluntarily surrenders to authorities promptly after the commission of the offense is a factor the court may weigh in reaching its decision to allow an acceptance of responsibility reduction. *See United States v. Nunley*, 873 F.2d 182, 187 (8th Cir.1989); Application Note 1(d).

seeking application of Guideline § 3E1.1, had the burden of persuading the court that he was entitled to it, and that the proper standard of proof in resolving factual disputes during the sentencing process is the preponderance of evidence standard.

"Sentencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all." *McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 2418, 91 L.Ed.2d 67 (1986). The sentencing guidelines do not specifically address the proper standard of proof or which party should bear that burden in resolving factual disputes over factors bearing on sentencing. *United States v. Urrego–Linares,* 879 F.2d 1234, 1237 (4th Cir.1989). Indeed, the Commission made a conscious decision to leave that responsibility to the courts to "fill in the blanks" and fashion appropriate rules. *Id.* at 1237, n. 1 (citing The Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 46–47, 47 n. 79 (June 18, 1987)).

In *Urrego–Linares,* we held that the appropriate standard of proof to be applied in a sentencing proceeding under the guidelines is a preponderance of the evidence standard. The court held that the preponderance standard passes muster under the due process clause and it discerned no reason to adopt the higher clear and convincing standard of proof. *Id.* at 1238. The court noted that sentencing occurs only after the defendant has been adjudged guilty beyond a reasonable doubt and adopting an enhanced standard of proof would serve only to burden and complicate the criminal sentencing process. Although there is some disagreement among courts which have considered this issue, in *Urrego–Linares* we implicitly suggested that the clearly emerging trend is toward adoption of the preponderance standard. *Id.* at 1237–38.

■ Regarding Harris' assertion that the government should bear the burden of proof on all issues at sentencing, we specifically rejected the identical contention in *Urrego–Linares.* The court held "that the defendant has the burden of establishing by a preponderance of the evidence the

applicability of the mitigating factor in question." *Id.* at 1239. The court reasoned that if a defendant wishes to have his sentence reduced, for example if he claims he is entitled to an acceptance of responsibility reduction, the defendant should bear the burden on the issue. "If the defendant advances a mitigating factor, which, if accepted by the court, would lower the sentencing range and potentially reduce the ultimate sentence, the defendant should bear the burden of proof to establish the mitigating factor(s) by a preponderance." *Id.* at 1239. On the other hand, if the government seeks to enhance the sentence, it should bear the burden of proof and concomitant burdens of production and persuasion. *Id.* Such an allocation is fundamentally fair and satisfies the requirements of due process. It gives a defendant the opportunity to raise the issue and present evidence in his behalf that he is entitled to a reduction, and affords him an opportunity to contest assertions by the government. Moreover, the government is spared the difficult task of proving a negative, i.e. "that the defendant should not receive any mitigating adjustment." *Id.* at 1239–40.

■ Although the district court did not articulate a standard or burden of proof, such failure is harmless. Harris bore the burden of producing evidence establishing the presence of mitigating factors and of persuading the court that he was entitled to the reduction. Harris was given the opportunity to present evidence in his behalf in an effort to establish his entitlement. The record clearly establishes that Harris failed to show by a preponderance of the evidence that he was entitled to the two-step reduction for acceptance of responsibility. Therefore, the district court's decision and imposition of sentence will be affirmed.

AFFIRMED.