898 F.2d 148
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Albertus FITZ, Defendant-Appellant.
 No. 89-5119.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Nov. 8, 1989.
Decided: March 1, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, United States District Judge. (CR-88-279-A)
 Patricia A. Smith, Sanders, O'Donnell & Smith, Alexandria, Va., for appellant.
 Henry E. Hudson, United States Attorney; Liam O'Grady, Assistant United States Attorney, Alexandria, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, PHILLIPS and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Three questions are presented in this appeal: whether probable cause supported issuance of a search warrant, whether the federal statute under which appellant was convicted is unconstitutionally vague because it does not define "cocaine base" as opposed to "cocaine," and whether the federal Sentencing Guidelines were appropriately applied to enhance appellant's sentence for his "Role in the Offense." We affirm.
 
 
 2
 * On September 28, 1988, the Alexandria, Virginia Police Department received a phone call. The anonymous informant said that five Jamaican males and a black female called Debbie were selling drugs from the residence at 137 West Reed Avenue in Alexandria and that the drugs were supplied by a nameless source in New York City.
 
 
 3
 A few weeks later, on October 20, 1988, Roberta Ballenger, a volunteer with the Alexandria Crime Solvers Unit, spoke with an anonymous informant. The caller stated that there was $12,000 worth of cocaine at 137 West Reed Avenue, Alexandria. The caller said a black female named Debbie and a black male named "B" were selling drugs from that location, and that occupants of the residence had several semi-automatic weapons. The same day, after receiving information from the Crime Solvers Unit, police officer L.S. Erwin sent a confidential and reliable informant to the 137 West Reed Avenue residence to try to purchase cocaine. The informant was unsuccessful in this attempt, the affidavit averred, because only drug distributors were allowed into the dwelling. The informant did report, however, that a male named Chuckie, known to be a resident in the dwelling, was selling crack or cocaine in the 100 block of West Reed Avenue. Police officer Erwin then went to the residence where she found Chuckie standing inside the front doorway behind the screen door.
 
 
 4
 Police officer Erwin next prepared an affidavit in support of a search warrant for the residence of 137 West Reed Avenue, and the persons of a black female known as Debbie, a black male known as "B," and a black male known as Chuckie. The police officer recited the information received from the two anonymous phone calls of September 28 and October 20, recounted the confidential and reliable informant's attempt to buy drugs at the residence and the officer's own encounter with Chuckie in the door of the residence the same day. The police officer also stated that the informant who provided the tip to the Crime Solver's Unit was described as "a one year resident of the City of Alexandria, Virginia, [who had] been gainfully employed for two and a half years, [was] a churchgoer, not a user of drugs, a registered voter, and is familiar with the drug cocaine." The magistrate issued the warrant.
 
 
 5
 At 6:47 in the evening of October 20, 1988, police officers executed the warrant. They encountered a male named Chuckie at the residence. The officers went upstairs to a bedroom of the residence and seized an unspecified "large" quantity of money, two handguns and ammunition, a total of 445.25 grams of cocaine base, a notebook inside a "purse type brown bag," drug paraphernalia, a portable scanner, and personal papers of Debbie Dixon.
 
 
 6
 In the midst of the search, Debbie Dixon arrived at the house and was arrested. She stated that she and her boyfriend Albertus Fitz, known as "B," had been sharing the house for about a month. She denied knowledge of the drugs and said the bags containing guns belonged to Fitz, who often made trips to and from New York. On November 30, 1988, police officers arrested Albertus Fitz when he arrived at the Alexandria Courthouse on an unrelated criminal charge. He subsequently stated that the drugs and handguns belonged to him, not his girlfriend Dixon, and that he transported crack from New York to Alexandria where he sold the drug in ounce quantities.
 
 
 7
 After indictment for possession with intent to distribute fifty or more grams of crack cocaine, Dixon and Fitz moved to suppress the evidence on the ground that there was no probable cause to issue the search warrant. The trial court denied the motion as well as a motion for separate trial. After a trial by jury, Fitz was convicted of unlawful possession with intent to distribute fifty or more grams of cocaine base, known as crack, a Schedule II narcotic controlled substance, in violation of 21 U.S.C. Sec. 841(a)(1). Fitz appealed.
 
 II
 
 8
 A determination of probable cause calls for a practical, nontechnical totality of the circumstances analysis which balances the weight of all the indicators of reliability of an informant's tip. Illinois v. Gates, 462 U.S. 213, 234 (1983). The magistrate must decide "whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238. The reviewing court should accord the magistrate's determination of probable cause "great deference," id. at 236, but "must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." Id. at 239.
 
 
 9
 Viewing the totality of the circumstances under the Gates standard, we are persuaded that the affidavit was sufficient to support the issuance of the warrant. Cf. United States v. McCall, 740 F.2d 1331, 1336 (4th Cir.1984) (staleness of tip depends on "facts and circumstances of the case"). Even if that were not so, the good faith interpretation of United States v. Leon, 468 U.S. 897 (1984), would apply to preserve this warrant's validity. Nor is there merit to appellant's contention that the statute under which his sentence was invoked, 21 U.S.C. Sec. 841(a)(1), is unconstitutionally vague, cf. Kolender v. Lawson, 461 U.S. 352 (1983), or that the district court erred in enhancing appellant's sentence pursuant to Guideline Sec. 3B1.1.* See generally United States v. Harris, 882 F.2d 902, 906-907 (4th Cir.1989) (preponderance of the evidence standard during sentencing process).
 
 
 10
 The judgment of the district court is affirmed. We dispense with oral argument because the facts and the legal contentions are adequately presented in the materials before us and because argument would not aid in the decisional process.
 
 
 11
 AFFIRMED.
 
 
 
 *
 United States Sentencing Commission, Guidelines Manual, Sec. 3B1.1 (Oct.1988)