958 F.2d 370
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charlie Mack WILLIAMS, Sr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Adolphus Benjamin HANEY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Verlinda Faye SCALES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Reginald Orlando COBB, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Broderick Lamont WILLIAMS, Defendant-Appellant.
 Nos. 91-5565, 91-5566, 91-5571, 91-5572, 91-5573.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 17, 1992.
Decided March 20, 1992.
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Winston-Salem. Norwood Carlton Tilley, Jr., District Judge. (CR-90-277-WS)
 Argued: David Robert Tanis, Winston-Salem, N.C., for appellant Charlie Williams; William Lindsay Osteen, Jr., Osteen & Adams, Greensboro, N.C., for appellant Haney; Lisa S. Costner, Greeson, Grace & Gatto, P.A., Winston-Salem, N.C., for appellant Scales; David Ferris Tamer, WinstonSalem, N.C., for appellants Broderick Williams and Cobb; Paul Alexander Weinman, Assistant United States Attorney, Greensboro, N.C., for appellee.
 On Brief: Robert H. Edmunds, Jr., United States Attorney, Greensboro, N.C., for appellee.
 M.D.N.C.
 AFFIRMED.
 Before SPROUSE, WILKINS and LUTTIG, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 In November 1990, twenty-three defendants were indicted on a single count of conspiracy to possess with intent to distribute cocaine and heroin. See 21 U.S.C. § 846. After a joint jury trial, all defendants were found guilty. Five defendants, Charlie Williams, Sr., Verlinda Scales, Broderick Williams, Adolphus Haney, and Reginald Cobb, appeal, raising various issues relating to evidentiary questions, actions of the trial court, and sentencing. We affirm.
 
 
 2
 During the summer of 1986, Charlie Williams, Sr., established himself in the drug trade in Winston-Salem, North Carolina. Williams, Sr. did not involve himself directly with the drugs, preferring instead to work through a number of intermediaries. For review purposes these included his girlfriend Verlinda Scales, his grandson Broderick Williams, Adolphus Haney, and Reginald Cobb. The drug operation centered around the corner of 24th Street and Jackson Avenue where Williams, Sr. owned a home.
 
 
 3
 On October 30, 1991, Charlie Mack Williams, Jr., provided information to Winston-Salem police officers concerning his father's drug operations. He told the officers that they could find two Miller High Life cans just off Verlinda Scales' property with heroin contained in the cans' hidden compartments. After finding the cans, Officer Peele requested a search warrant for Scales' residence and in support of the warrant attached the affidavit of a "confidential and reliable" informant, Williams, Jr. The subsequently issued search warrant specifically described and named Williams, Sr. Drugs were seized from the house and as Williams, Sr. attempted to leave the house he was arrested and searched. No incriminating evidence, however, was found on him. Further investigation resulted in the arrest of the other defendants. All defendants were convicted after a joint trial, and this appeal followed. We address each appellant's argument in turn.
 
 
 4
 CHARLIE WILLIAMS, SR.
 
 
 5
 Williams, Sr. raises three issues on appeal. He first argues that the district court erred in determining that he did not have standing to suppress the evidence obtained from the search of Scales' home. At trial, he conceded that he had no expectation of privacy or proprietary interest in Scales' home, but argued that he had standing because he was named and described in the search warrant. We believe that the district court properly denied his suppression motion.
 
 
 6
 Essentially, the argument advanced by Williams, Sr. is the "targettheory" expressly rejected in Rakas v. Illinois, 439 U.S. 128 (1978). The petitioners in Rakas asserted that since the search was "directed" at them and because they were legitimately in the car at the time of the search, they had standing to contest the legality of the search of the car. The Rakas court, however, rejected that argument. Rakas held that a defendant must have either a property interest or a reasonable expectation of privacy in the area to be searched in order to have standing. The court expressly rejected as dicta language in Jones v. United States, 362 U.S. 257 (1960), to the effect that standing may be conferred on "one against whom the search was directed." Rakas, 439 U.S. at 135 ( quoting Jones, 362 U.S. at 261).
 
 
 7
 Williams, Sr. next argues that he was entitled to a two point reduction of his base offense level under U.S.S.G. § 3E1.1(a) because he admitted his role in the conspiracy in his Presentence Report and during an interview with the Winston-Salem Journal prior to trial. The article was later published. He argues that these acts evidence his acknowledged responsibility in the criminal conduct, even though he expressed no remorse.
 
 
 8
 A district court's determination whether a defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility is a factual one and will not be reversed unless it is clearly erroneous. United States v. Harris, 882 F.2d 902, 905 (4th Cir.1989). Although the district court recognized that Williams, Sr. acknowledged his drug involvement, the court believed that the tenor of the article showed that Williams, Sr. prided himself on his drug organization and the fact that others came to him for lessons. Given this, the court declined to give a downward adjustment for acceptance of responsibility. The court's decision is not clearly erroneous.
 
 
 9
 Lastly, Williams Sr. argues that determination of the quantity of cocaine involved for purposes of sentencing under the Guidelines is a jury question. Counsel, at argument, candidly conceded that no case law supports his position, but asks us to establish that principle. This we cannot do. "Determination of the relevant quantity of cocaine for purposes of calculating a base offense level is a factual determination for the court subject to the clearly erroneous standard of review." United States v. Campuzano, 905 F.2d 677, 680 & n. 4 (2d Cir.), cert. denied, 111 S.Ct. 363 (1990).
 
 VERLINDA SCALES
 
 10
 Scales raises three issues on appeal. She argues that the omissions in the affidavit of Williams, Jr. in support of the search warrant rendered the warrant invalid. She specifically argues that Officer Peele omitted that Williams, Jr. expressed a strong dislike of Scales, wanted to see her "busted," and suggested that he was willing to plant drugs on her to see that she was arrested.
 
 
 11
 In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court set forth two requirements for attacking a facially valid affidavit in support of a search warrant that contains a false statement. In United States v. Colkley, 899 F.2d 297 (4th Cir.1990), we adapted this rule to omissions. To attack an affidavit that omits information the defendant must show: 1) that the omission is the product of a deliberate falsehood or of a reckless disregard for the truth, and 2) inclusion of the omitted information in the affidavit would defeat probable cause. Colkley, at 301.
 
 
 12
 We believe that the trial court conducted a thorough hearing on this issue and properly concluded that the search warrant was valid. At the Franks hearing, the trial court heard testimony from Officer Peele as to how the warrant was obtained. It also reviewed the transcript of the two interviews Peele and two other officers had with Williams, Jr. which led to the discovery of heroin just off Scales' property. After reviewing this information, the court concluded that Officer Peele did not act intentionally or in reckless disregard of the truth. Further, even if the omissions had been included in the affidavit, there would still have been sufficient evidence to establish probable cause. We perceive no error in the district court's conclusions.
 
 
 13
 Scales next argues that the government failed to establish for sentencing purposes that she entered the Williams' drug conspiracy around November 1, 1988. The government's key witness in establishing when Scales entered the conspiracy was defendant Michael Ellis. He testified that she entered the organization during the summer of 1988. He further testified that he left the organization late in October 1988 because of Scales and that the house to which she demanded, and was given a key in October 1988, was the organization's headquarters. Several witnesses also testified at trial that they handed drug money to her at the house.
 
 
 14
 Scales emphasizes that Ellis also testified that he never saw her handle any drugs and that there was no evidence that she wanted the key for illegal purposes. It is probable that Ellis never saw Scales handle drugs because he left the organization shortly after she joined. Moreover, viewing all the evidence, it is reasonable to infer that the purpose for which she was given the key was for drug-related activities.
 
 
 15
 Lastly, Scales argues that there was insufficient evidence to establish her participation in the conspiracy beyond a reasonable doubt. This claim is meritless. A review of the complete record overwhelmingly establishes her role in the conspiracy. For instance, numerous defendants testified that they had exchanged money for drugs with her at Williams' house on Jackson Avenue.
 
 ADOLPHUS HANEY
 
 16
 Haney argues that the evidence against him was insufficient to establish his participation in the conspiracy. He argues that the mere existence of a buyer-seller relationship is insufficient to prove that a defendant agreed to participate in the conspiracy. See United States v. Bascaro, 742 F.2d 1335, 1359 (11th Cir.1984), cert. denied, 472 U.S. 1017 (1985).
 
 
 17
 There was, however, ample evidence to find Haney guilty of conspiracy beyond a reasonable doubt, including the testimony of four government witnesses. Haney was arrested while standing in front of Williams, Sr.'s house on Jackson Avenue. Defendant Baldwin testified that Haney was a lookout man for the house where the drugs were being sold. Defendant Dunbar testified that he worked for Haney selling drugs on Jackson Avenue. Defendant Terry testified that he and Haney worked together for defendant Michael Ellis on Jackson Avenue, one handling cocaine, the other heroin. Defendant Ellis testified that Haney and Terry worked for him and that Ellis was supervised by Williams, Sr. Accordingly, we reject Haney's claim.
 
 REGINALD COBB
 
 18
 Cobb also argues that the evidence against him was insufficient to establish his participation in the conspiracy. He argues that at most the evidence establishes that he sold drugs in the area in which the Williams' organization operated.
 
 
 19
 Again, however, there was overwhelming evidence presented against Cobb to establish his participation in the conspiracy. Baldwin testified that he bought heroin and cocaine from Cobb on Jackson Avenue in 1989. Williams, Jr. testified that he had overheard several conversations between his father, Williams, Sr., and Cobb about handling cocaine and heroin transactions. Furthermore, defendant Terry testified that when he asked Williams, Sr. for a drug job to make some easy cash, the elder Williams directed him to Cobb. Therefore, we likewise reject Cobb's claim.
 
 BRODERICK WILLIAMS
 
 20
 Broderick Williams argues that the district court abused its discretion in denying his request for severance. He argues that, had his trial been severed, his grandfather would have testified and his testimony would have proved Broderick Williams' innocence in the alleged conspiratorial activities.
 
 
 21
 When a motion for severance is based on the desire for a codefendant's testimony, the moving defendant must establish, among other things, the likelihood that the co-defendant would testify at a second trial and waive his Fifth Amendment privilege. United States v. Parodi, 703 F.2d 768, 779 (4th Cir.1983). This requirement, however, is not met when an offer to testify is conditioned on the codefendant's case being tried first. Id. A trial court's ruling on severance will not be disturbed but upon a clear abuse of discretion which resulted in prejudice. United States v. Frazier, 394 F.2d 258, 260 (4th Cir.), cert. denied, 393 U.S. 984 (1968).
 
 
 22
 We believe the district court properly denied the severance request. Williams, Sr.'s offer to testify for his grandson was conditioned on having his case tried first. Furthermore, no prejudice resulted in not severing the trial. Although the offered testimony would have contradicted the testimony of Williams Sr.'s supplier as to one incident, the same testimony would have confirmed that on another occasion Broderick Williams did deliver drug money to his grandfather.
 
 
 23
 In view of the above, the judgment of the district court is affirmed.
 
 
 24
 AFFIRMED.