972 F.2d 342
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas ADAMS, Defendant-Appellant.
 No. 91-5618.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 8, 1992
Decided: August 12, 1992
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.
 Michael Vernon Marlow, LAW OFFICES OF CLARK & MARLOW, for Appellant.
 John Kirk Brandfass, Assistant United States Attorney, for Appellee.
 Michael W. Carey, United States Attorney, for Appellee, on brief.
 S.D.W.Va.
 AFFIRMED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 After negotiating for and participating in the purchase of about seven ounces of crack cocaine on October 20, 1990, and selling several grams of crack cocaine on December 17 and 18, 1990, Thomas Adams pled guilty, pursuant to a plea agreement, to one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). Applying the United States Sentencing Guidelines, the district court sentenced Adams to a 188-month term of imprisonment. Adams now appeals the sentence and, finding no reversible error, we affirm.
 
 
 2
 * On October 19, 1990, a confidential government informant offered to sell crack cocaine to Thomas Adams in response to Adams' mention of the fact that he intended to make an out-of-town purchase of the controlled substance. The next day, Adams visited the informant's home and asked to purchase five ounces of crack cocaine at $1,000 per ounce. Later, on October 20, Adams negotiated on behalf of his brother, Ronald Adams, for the purchase of an additional two ounces. Having arranged the buy to take place in the parking lot of a Charleston, West Virginia grocery store, the informant was then fitted with a recording device and provided by the government with ten oneounce packages of cocaine. After a series of afternoon meetings at various sites in Charleston, which Adams apparently coordinated, Adams, his brother and David McGhee purchased seven ounces of crack cocaine for $6,740. All three purchasers were then arrested and the cocaine was recovered by government agents.
 
 
 3
 Following his arrest, Adams agreed to plead guilty to one count of conspiracy to distribute cocaine base and was released on a $10,000 unsecured bond. About a month after his release, the Probation Office administered a urinalysis test to Adams, the results of which indicated the presence of cocaine in Adams' body. The plea agreement which followed the arrest was later withdrawn. In December 1990, the government received information that Adams was again selling cocaine, and by using another informant, the government investigated and eventually purchased cocaine from Adams, at which time the government attempted to re-arrest him. Adams managed to escape only to decide later to turn himself in, which again led to his arrest and detention.
 
 
 4
 In March 1991, Adams entered into a second plea agreement with the government for disposition of both the October and December transactions, pursuant to which he pled guilty to one count of possession with intent to distribute cocaine base. Adams agreed to assist the government and apparently did provide the government with helpful information. As part of the plea agreement, Adams stipulated that "the approximately seven (7) ounces of cocaine base that the defendant conspired to possess [on October 19] with the intent to distribute as a participant in the criminal conspiracy" would be included with the amount of cocaine base involved in the December transactions to determine Adams' "relevant conduct" for sentencing.
 
 
 5
 At sentencing, the district court applied the sentencing guidelines to determine a base offense level of 34, based on the involvement of an estimated 318.78 grams of cocaine. See U.S.S.G. § 2D1.1(c)(5). The district court further enhanced Adams' offense level by two levels under U.S.S.G. § 3B1.1(c), based upon his supervisory role in the offense and refused Adams' request for a two-level reduction under U.S.S.G. § 3E1.1(a) for accepting responsibility for his criminal conduct. This resulted in an applicable sentence range of 188 to 235 months. After denying Adams' motion for a downward departure based upon what Adams described as "sentencing entrapment" and the fact that the crime involved the purchase of drugs from the government, the court imposed a 188-month term of confinement. Thereafter Adams timely filed a notice of appeal.
 
 II
 
 6
 On appeal, Adams maintains that the district court erred in finding just over seven ounces to be the quantity of cocaine base attributable to the criminal offense for the purpose of determining the base offense level under U.S.S.G. § 2D1.1. Specifically, Adams argues that the two ounces purchased by his brother on October 20, 1990, should not be included as relevant to the determination of Adams' sentence. Under U.S.S.G. § 1B1.3(a), a district court in determining the base offense level shall consider "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable." Considering that Adams negotiated for the purchase of all seven ounces of cocaine base (including the two ounces designated for purchase by Adams' brother), made arrangements to ensure the success of the purchase, and stipulated in the plea agreement to the fact that the entire quantity was relevant for sentencing purposes, the objection, if not waived by the stipulation in the plea agreement, see United States v. Wiggins, 905 F.2d 51, 52-53 (4th Cir. 1990), is wholly without merit. See United States v. Williams, 880 F.2d 804, 805-06 (4th Cir. 1989) (sentencing guidelines require aggregation of quantities and types of drugs even if not specified in the count of conviction so long as the drugs "were part of the same course of conduct or part of a common scheme or plan as the count of the conviction") (quoting U.S.S.G. § 1B1.3(a)(2)).
 
 
 7
 Next Adams relies upon United States v. Lenfesty, 923 F.2d 1293 (8th Cir.), cert. denied, 111 S. Ct. 1602 (1991), to support his argument that the government should not be allowed to profit by an increased sentence resulting from "sentencing entrapment." This term apparently connotes the sale of a large amount of drugs by the government to an unsuspecting criminal defendant in such an outrageous manner that it "overcomes the will of an individual predisposed only to dealing in small quantities." Id. at 1300. Even if that theory is tenable, there is no evidence here to support its application. Adams told the government informant that he planned to purchase cocaine from an out-of-town source and in response the informant offered to sell the drugs to Adams at what was apparently a good price. Despite the fact that he "routinely" purchased only one or, perhaps, two ounces at a time, Adams appeared quite willing to buy five ounces from the informant on the day following their initial meeting. Furthermore, while arranging the deal, Adams sought to help his brother take advantage of the bargain by asking to buy an additional two ounces on his behalf. Although the government informant had ten ounces of cocaine base at his disposal, there is no evidence that he attempted to extend the purchase beyond the seven ounces previously agreed upon by Adams. Thus, in light of the clear evidence of the defendant's predisposition to purchase the cocaine base made available to him, whatever limits there may be on the government's attempts to tailor a "reverse buy" scenario for sentencing enhancement purposes, this case does not present the issue.
 
 
 8
 Adams also challenges the enhancement of his base offense level by two points, under U.S.S.G. § 3B1.1(c), based upon his role as "an organizer, leader, manager, or supervisor" in the drug transaction. The district court's decision to give such an enhancement will be reversed on appeal only if clearly erroneous, see United States v. Fells, 920 F.2d 1179, 1182-83 (4th Cir. 1990), cert. denied, 111 S. Ct. 2831 (1991), and where, as here, the district court awarded only a two-level enhancement based on evidence which could be construed to show that the defendant negotiated a drug transaction for himself and others, and made arrangements to ensure the safety and success of the transaction, clear error cannot be found.
 
 
 9
 Adams next assigns error to the district court's refusal to reduce his offense level by two levels under U.S.S.G. § 3E1.1(a), which permits the sentencing court to make such a reduction if the defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Adams argues that his guilty plea and the assistance he gave to the government combine to satisfy his burden of showing by a preponderance of the evidence that he has adequately accepted responsibility for his criminal conduct. See United States v. Harris, 882 F.2d 902, 907 (4th Cir. 1989) (holding that the party seeking application of § 3E1.1 has the burden of showing an entitlement to it). In addition, Adams brings attention to the fact that he turned himself over to the police after he was caught selling cocaine in December 1990.
 
 
 10
 The government responds that the district court's determination that Adams did not clearly demonstrate acceptance of responsibility for his conduct cannot be said to constitute clear error. See United States v. Martinez, 901 F.2d 374, 377 (4th Cir. 1990). First, while Adams did submit himself to the custody of the government following his attempted sale of cocaine in December 1990, that cocaine sale itself, which took place while Adams was on bond following his arrest for the October transaction, provides sufficient evidence that Adams did not accept the wrongfulness of his acts. See United States v. Lassiter, 929 F.2d 267, 270 (6th Cir. 1991) (defendant not entitled to sentence reduction for acceptance of responsibility in view of her illegal conduct while on bond). The government also notes that a urinalysis conducted between November 20 and December 4, 1990, indicated that Adams was, at that time, a user of cocaine. Adams, suggesting that the "positive" urinalysis was the result of his having absorbed cocaine through the palms of his hands by handling some quantity of the substance, maintains that he was not a cocaine user at the time.
 
 
 11
 We recognize that the district court is in a " 'unique position to evaluate a defendant's acceptance of responsibility[for his or her prior criminal conduct],' " United States v. White, 875 F.2d 427, 430 (4th Cir. 1989) (quoting U.S.S.G. § 3E1.1 (Application Note 5)), and its judgment in this regard is thus entitled to substantial deference on review. In this case, the district court based its decision to deny the § 3E1.1 reduction on the fact that Adams "continued to consciously commit crimes while on pretrial release and after entering into a first plea agreement." Since that determination is not without foundation, we cannot reach a conclusion to the contrary.
 
 
 12
 Finally, Adams theorizes that the nature of a reverse buy situation, in which government agents maintain complete control over the distribution of the drugs, results in the effective control of the crime's severity by the government, thereby making the crime inherently less dangerous to society. In Adams' view, this distinction constitutes a "mitigating circumstance of the kind ... not adequately taken into consideration by the Sentencing Commission in formulating the guidelines" and Adams therefore claims that the district court erred in failing to grant the motion for a downward departure under 18 U.S.C. § 3553(b). See also, U. S.S.G. § 5K2.0 (Grounds for Departure (Policy Statement)).
 
 
 13
 We cannot agree that the sole fact that Adams happened, on this occasion, to purchase his drugs from a government informant rather than from another source, serves to make the crime to which he pled guilty less serious. Regardless of how he came to receive the substance, Adams possessed crack cocaine with the intent of distributing it to others. Whether the district court might properly have considered the nature of the drug purchase as a basis for a downward departure need not be decided, because in this case the court exercised its discretion to deny a departure, a determination which is not appealable unless the refusal was based on the district court's erroneous belief that it lacked the authority to depart. See United States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir.), cert. denied, 111 S. Ct. 65 (1990). The district court's characterization of Adams' motion for a downward departure as "absolutely monstrous," we believe, makes plain the fact that the district court in this case considered and rejected, albeit quickly, Adams' motion for downward departure on its merits. That decision is not subject to our review.
 
 
 14
 Accordingly, the sentence imposed by the district court is affirmed.
 
 AFFIRMED