**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                        No. 95-5537

OLUSHOLA TIAMIYU,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CR-93-347-MJG)

Submitted: March 31, 1997

Decided: August 6, 1997

Before ERVIN and NIEMEYER, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

James C. Savage, JAMES C. SAVAGE, P.A., Rockville, Maryland;
Larry Allen Nathans, Jason D. Tulley, LAW OFFICES OF LARRY
ALLEN NATHANS, Baltimore, Maryland, for Appellant. Lynne A.
Battaglia, United States Attorney, Richard C. Kay, Assistant United
States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Olushola Tiamiyu pled guilty to one count of possession and use of unauthorized access devices (credit card fraud), in violation of 18 U.S.C. § 1029(a)(2), (3) (1994) for which he was sentenced to 87 months imprisonment. Tiamiyu appeals claiming (1) that the Government failed to prove that he derived more than $1 million in gross receipts and awarding him a 4-level increase, USSG§ 2F1.1(b)(6)(B);[1] (2) that the district court erred in calculating the amount of loss for which he would be held accountable was more than $10 million, USSG § 2F1.1(b)(1)(P); and (3) that the district court erred in denying him a two-level reduction for acceptance of responsibility, USSG § 3E1.1. We affirm.

Tiamiyu single-handedly operated a large-scale credit card fraud scheme whereby he would obtain names and personal information from loan applications and credit reports, including credit card account numbers. He would then contact the credit card issuer and, posing as the cardholder, change the billing address to one he had access to and then request a replacement card. Tiamiyu used these cards to obtain cash, goods, and services.

When Tiamiyu was arrested in July 1993, he had in his possession five credit cards issued by Wachovia Bank, none of which were in his name. A storage locker rented by Tiamiyu under an alias was searched, pursuant to a search warrant, and found to contain sixteen driver's licenses (all bearing different names and Tiamiyu's photograph), thirty credit cards, and various documents pertaining to credit cards.

_____

[1] United States Sentencing Commission, <u>Guidelines Manual</u> (Nov. 1994).

2

At Tiamiyu's sentencing hearing, Delores Boni, a fraud investigator for Nationsbank, testified that, based on the evidence found in the storage locker, she generated a list of 1000 names and either social security numbers or credit card numbers which she sent out to 124 "targeted" banks seeking information on fraud losses incurred by each bank.**2** Only thirteen banks responded, reporting losses totalling $1,684,234 (including Nationsbank). Dividing this figure by the thirteen responding banks, the district court estimated an "absolutely minimal" loss of $100,000 per bank. Multiplying this by the 124 targeted banks resulted in a total loss of $12.4 million, raising Tiamiyu's offense level by fifteen. USSG § 2F1.1(b)(1)(P). Tiamiyu also received a four-level increase under USSG § 2F1.1(b)(6)(B) because his offense affected a financial institution and his gross receipts were more than $1 million.

Tiamiyu appeals his sentence, claiming that the district court erred in denying an adjustment for acceptance of responsibility and in its findings regarding the amount of loss attributable to his offense.

The district court's finding of amount of loss is generally a factual question reviewed for clear error. United States v. Chatterji, 46 F.3d 1336, 1340 (4th Cir. 1995). Each case is decided on its own facts. United States v. Mancuso, 42 F.3d 836, 849 (4th Cir. 1994). The district court did not err in finding that Tiamiyu's conduct affected a financial institution and that he derived more than $1 million in gross receipts, USSG § 2F1.1(b)(6)(B). Evidence submitted by Citibank alone showed a loss of $1,468,566 from 691 Visa and Mastercards affected by Tiamiyu's conduct. Nevertheless, Tiamiyu asserts that the district court's findings on this issue were erroneous because the government did not prove that he had assets of over $1 million or that he personally received more than $1 million. Tiamiyu also claims that the district court failed to make factual findings on this issue. However, Tiamiyu cites no authority for his first proposition (that the government must prove that he had over $1 million in assets) and the two cases he cites as supporting his second proposition do not support his

---

**2** The banks were chosen either because they were an issuing bank shown on the credit cards or account information found in Tiamiyu's locker or were included on handwritten lists of banks, bank directories, or photocopied telephone books which Tiamiyu had targeted.

claim as they only involve claims by one of several co-defendants regarding allocation of losses.**3** Finally, Tiamiyu's claim that the district court failed to make factual findings is belied by the record. The district court also did not err in finding that Tiamiyu's conduct resulted in a total loss of $12.4 million. The commentary to § 2F1.1 provides that:

> For the purposes of subsection (b)(1), the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information. This estimate, for example, may be based on the approximate number of victims and an estimate of the average loss to each victim . . . .

USSG § 2F1.1, comment. (n.8). This is exactly what the district court did in this case. Because "the loss need not be determined with precision," and the district court made a reasonable estimate given all the available information, Tiamiyu's claims challenging the district court's methodology are without merit.

Finally, Tiamiyu asserts that the district court erred in denying a two-level reduction in his base offense level for acceptance of responsibility pursuant to USSG § 3E1.1. Whether the reduction is warranted is a factual question, reviewed for clear error. United States v. Curtis, 934 F.2d 553, 557 (4th Cir. 1991); United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). In order to receive this reduction, a defendant must demonstrate that he is entitled to the adjustment by a preponderance of the evidence. United States v. Harris, 882 F.2d 902, 907 (4th Cir. 1989). And, a guilty plea does not automatically entitle the defendant to the reduction. Id. Tiamiyu admitted possessing only the five credit cards found on his person when he was arrested and claimed that he was delivering them for a friend. And in his sentencing memorandum, Tiamiyu accepted responsibility for only $101,589. Given Tiamiyu's denial of the level of his involve-

_____

**3 See United States v. Millar**, 79 F.3d 338 (2d Cir. 1996) (remanding for a determination that one of three co-defendants had personally derived more than $1 million in gross receipts); and United States v. Wong, 3 F.3d 667 (3d Cir. 1993) (addressing claim raised by one of three co-conspirators).

4

ment in the underlying offense, the district court did not err in denying this adjustment. <u>See</u> USSG § 3E1.1, comment. (n.1(a)) (the adjustment does not apply when a defendant falsely denies or frivolously contests relevant conduct that the court determines to be true).

Accordingly, we affirm Tiamiyu's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

5