**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas BRAXTON,
Defendant–Appellant.**

**No. 89–5651.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 8, 1990.

Decided May 8, 1990.

Stephen Jon Cribari, Deputy Federal Defender, Baltimore, Md., for defendant-appellant.

Susan Moss Ringler, Asst. U.S. Atty., Baltimore, Md., for plaintiff-appellee.

Fred Warren Bennett, Federal Public Defender, Baltimore, Md., on the brief, for defendant-appellant.

Breckinridge L. Willcox, U.S. Atty., Baltimore, Md., on the brief, for plaintiff-appellee.

Before SPROUSE and CHAPMAN, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

At sentencing Thomas Braxton was denied a two-level reduction for acceptance of responsibility, because the sentencing judge found that the purpose of acceptance of responsibility was to lead toward rehabilitation, and that because of his mental and emotional condition Braxton could not accept responsibility to the extent necessary to entitle him to the reduction. Appellant claims error because the court found rehabilitation to be a necessary element in its consideration of the request for the reduction. We agree.

Appellant also challenges the district court's use of a base offense level greater than the level applicable to the crimes to which he pled guilty. He claims that it was error to enhance the base offense level in the absence of a stipulation, as provided in § 1B1.2(a), to the more serious crime of attempted murder. We find that the word "stipulation" as used in this section includes a defendant's oral agreement or acceptance on the record of the government's presentation to the court of facts establishing an offense more serious than his offense of conviction.

Therefore, we affirm the district court's use of the enhanced base offense level, but we reverse and remand for resentencing because of the district court's misinterpretation of the law relating to acceptance of responsibility.

I

In September 1974, Thomas Braxton was confined to St. Elizabeth's Hospital in Washington, D.C., pursuant to a United States District Court order, after he had been found not guilty by reason of insanity on a charge of bank robbery. On May 12, 1988, the United States Marshal for the District of Columbia received an arrest warrant charging Braxton with unauthorized leave from the hospital, and on June 9, 1988, the Marshal's Service found that Braxton was living in Mt. Rainier, Maryland. Early on the morning of June 10, 1988, four deputy marshals went to the Maryland address and determined that Braxton was in Apartment 3. They knocked on the door and advised appellant that they had an arrest warrant for him. There was no response although the deputies could hear movement within the apartment. After the deputies knocked again, identified themselves and unlocked the door, appellant fired a .38 caliber revolver through the door opening. None of the deputies was hit and shortly thereafter appellant fired another round through the doorway. Braxton advised the deputies that he was not coming out and was not going back to the hospital. He threatened to kill them if they came into the apartment. Reinforcements were called and tear gas was used to subdue the appellant and arrest him. Braxton stated after arrest that he knew the United States Marshals were knocking on his door, and he fired at them because he did not wish to return to the hospital.

At arraignment, defense counsel requested a continuance for approximately eight months to have the appellant evaluated by a psychiatrist to determine his competency and to evaluate whether an insanity defense could be used. In March 1989, defense counsel advised the court that Braxton was competent to stand trial and that he would not be presenting an insanity defense. In May 1989, without the benefit of a plea agreement, appellant pled guilty to Counts 2 and 3 of the indictment, which charged (2) assault on a federal officer in

violation of 18 U.S.C. § 111, and (3) use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). The court conducted the proceeding required by Federal Rule of Criminal Procedure 11 and advised appellant that Count 1, which charged attempt to murder, was still outstanding against him, and as to Counts 2 and 3 he would be sentenced under the sentencing guidelines. After finding that appellant was mentally competent, that he entered the plea voluntarily and without a plea agreement, and that there was a factual basis for the plea, the court accepted the pleas of guilty. The court solicited memoranda from defense counsel and the United States Attorney on the issue of an appropriate sentence. Prior to sentencing, defense counsel filed written objections to the presentence investigation report as it dealt with acceptance of responsibility, victim related adjustments, and the suggested base offense level using the more serious offense of attempted murder.

On July 21, 1989, Braxton was sentenced. Prior to sentencing, all of the pertinent medical records and reports were reviewed by the court. Dr. Neil Blumberg, a psychiatrist who had evaluated appellant at his attorney's request, testified that Braxton was schizophrenic but not insane, and that he should remain in the maximum security inpatient facility at St. Elizabeth's Hospital while serving any sentence. Pursuant to the 1984 Guidelines, Braxton was sentenced to 63 months imprisonment for assaulting a federal officer, to be followed by 60 months incarceration for use of a handgun,[1] and a three-year term of supervised release to commence on release from imprisonment. The government's motion to dismiss Count 1 of the indictment was then granted. During the sentencing, the court denied appellant's request for a two-level reduction for acceptance of responsibility. This denial was based upon the court's finding that due to Braxton's mental illness he could not show remorse for what he had done, and without remorse he could not take the necessary step toward rehabilitation and accept responsibility.

---

**1.** This is a mandatory five-year consecutive sen-

## II

Rehabilitation is no longer a purpose for incarcerating a defendant under the federal law. This was made clear when Congress created the United States Sentencing Commission for the purpose of establishing sentencing policies and practices for the Federal Criminal Justice System. At 28 U.S.C. § 994(k), it is stated: "The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of *rehabilitating* the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment." (Emphasis added.) In *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 652, 102 L.Ed.2d 714 (1989), the Court found:

> The Act, as adopted, revises the old sentencing process in several ways:
>
> 1. It rejects imprisonment as a means of promoting *rehabilitation*, 28 U.S.C. § 994(k), and it states that punishment should serve retributive, educational, deterrent, and incapacitative goals, 18 U.S.C. § 3553(a)(2).

(Emphasis added.)

■ Acceptance of responsibility is covered in part E of the guidelines and provides:

> § 3E1.1. *Acceptance of Responsibility.*
>
> (a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.
>
> (b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilty by the court or jury or the practical certainty of conviction at trial.
>
> (c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

tence. 18 U.S.C. § 924(c).

*Commentary*

*Application Notes:*

1.  In determining whether a defendant qualifies for this provision, appropriate considerations include, but are not limited to, the following:

(a) voluntary termination or withdrawal from criminal conduct or associations;

(b) voluntary payment of restitution prior to adjudication of guilt;

(c) voluntary and truthful admission to authorities of involvement in the offense and related conduct;

(d) voluntary surrender to authorities promptly after commission of the offense;

(e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(f) voluntary resignation from the office or position held during the commission of the offense; and

(g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

2.  Conviction by trial does not preclude a defendant from consideration under this section. A defendant may manifest sincere contrition even if he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).

3.  A guilty plea may provide some evidence of the defendant's acceptance of responsibility. However, it does not, by itself, entitle a defendant to a reduced sentence under this section.

4.  Conduct resulting in an enhancement under § 3C1.1 (Willfully Obstructing or Impeding Proceedings) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.

5.  The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation.

*Background:* The reduction of offense level provided by this section recognizes legitimate societal interests. For several reasons, a defendant who clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense by taking, in a timely fashion, one or more of the actions listed above (or some equivalent action) is appropriately given a lesser sentence than a defendant who has not demonstrated sincere remorse.

The availability of a reduction under § 3E1.1 is not controlled by whether the conviction was by trial or plea of guilty. Although a guilty plea may show some evidence of acceptance of responsibility, it does not automatically entitle the defendant to a sentencing adjustment.

In denying the appellant a reduction of acceptance of responsibility, the sentencing court stated:

I approach the acceptance of responsibility question really not in a broad perspective, but in a narrow perspective of what does it mean in the context of the guidelines. And I think that the purpose of giving the reduction is has the defendant taken the steps towards rehabilitation, which acceptance of responsibility is the first step toward that? In some cases, that may require no more than a plead (sic) of guilty, and in other cases, it may require a show of remorse. And I think that varies from case to case. It is an unfortunate fact in this case, and I understand Mr. Braxton's and Mr. Cribari's —the problem as he poses it, but I think he—he mis-states the problem. The—in Mr. Braxton's case, unfortunately, because of the condition in which Mr. Braxton is, he is unable to take that step, perhaps, towards rehabilitation at that time because he cannot accept responsibility. And I under—I can fully understand the conversation Mr. Cribari had with—with his client back in, you know,

why am I at St. E's., and why can't I—why am I insane, and if not, why don't I have an insanity defense here? I understand that from an academic, theoretical perspective, it all seems illogical. But I think if you focus upon the acceptance of responsibility in terms of what the purpose of that—of that reduction is given, unfortunately, Mr. Braxton here cannot appreciate and cannot take that step which acceptance of the responsibility entails and entitles him to the—to the two point reduction. So I, from a—this is not a—not making any moral judgments in the fact that Mr. Braxton hasn't accepted responsibility to the extent that he can. I—I appreciate that, and I think Doctor Blumberg is right, that he has to the extent that he can. Unfortunately, *from a legal perspective,* the extent that he can is not sufficient to entitle him to—to the two-level reduction, in light of the purpose of that reduction. So that's my sentence and—and the reasons for it.

(Emphasis added.) The judge's stated reason for refusing the two-level reduction for acceptance of responsibility demonstrates that he understood the law to require that acceptance of responsibility be a step toward rehabilitation and that the purpose of the reduction had rehabilitation as a goal. Nowhere in § 3E1.1, or in the application notes or background commentary, is the word "rehabilitation" mentioned. We have not considered rehabilitation in any of our decisions construing the meaning or application of § 3E1.1. *See United States v. White,* 875 F.2d 427 (4th Cir.1989); *United States v. Urrego–Linares,* 879 F.2d 1234 (4th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989); *United States v. Harris,* 882 F.2d 902 (4th Cir. 1989).

The guideline for a reduction of sentence is addressed to whether a "defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." § 3E1.1(a). The district judge has found that Braxton accepted responsibility to the extent that he could. The problem may have been occasioned by the testimony of Dr. Neil Blum-

berg, a psychiatrist who had examined and evaluated the appellant. According to Dr. Blumberg, appellant acknowledged his involvement in the offense and his responsibility, but felt justified in using force because he did not wish to return to the hospital because he did not feel that he was mentally ill. The doctor found that Braxton was schizophrenic and that Braxton thought people in the hospital were talking about him and accusing him of having AIDS. The psychiatrist stated that Braxton was a borderline case of insanity: "But his illness really prevents him from experiencing remorse because of the distortion of his perception both at that time and—at the present time." Although the trial court accepted this evidence and found that Braxton was sane and had accepted responsibility to the extent that he could, the court misperceived the purpose of the guideline by interjecting into the calculus a need for rehabilitation. This was error, because rehabilitation is not a factor in the consideration of acceptance of responsibility.

We do not hold that Braxton is entitled to a two-level reduction as a matter of law, but we do hold that the sentencing judge erred when he denied the reduction as a matter of law because Braxton could not prove that he was taking steps toward rehabilitation. The sentence as to Count 2 must be set aside and Braxton resentenced. The sentence as to Count 3 is a mandatory five-year minimum consecutive sentence and it is not affected by the district court's error in sentencing on Count 2.

### III

Appellant claims additional error by the district judge in applying the base offense level for attempted murder,[2] because he pled guilty only to aggravated assault of federal officers and to the use of a handgun during a crime of violence, and there was no stipulation to the more serious offense of attempted murder.

---

**2.** The base offense level for attempted murder is 20. § 2A2.1. The base offense level for aggra-

vated assault is 15. § 2A2.2.

In establishing the applicable guidelines, § 1B1.2(a) provides:

Determine the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction (*i.e.*, the offense conduct charged in the count of the indictment or information of which the defendant was convicted). *Provided*, however, in the case of conviction by a plea of guilty or *nolo contendere* containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline section in Chapter Two most applicable to the stipulated offense.

The present case is complicated because a plea agreement is not involved. Defendant pled guilty to Counts 2 and 3 of the indictment without any understanding as to what would happen to Count 1. Although this count was dismissed by the government after appellant was sentenced on Counts 2 and 3, there was no agreement that this would be done.

Since there was no plea agreement, written or oral, and there was no agreement of the facts designated to be a stipulation, we are presented with the question of whether § 1B1.2 requires that the stipulation mentioned therein be called "stipulation," or whether a defendant's agreement to the statement of facts by the government can be interpreted as a stipulation for the purposes of establishing a more serious offense than the offense of conviction under § 1B1.2(a).

At various hearings in this matter—arraignment, change of plea, and sentencing—appellant was carefully and clearly instructed that he was subject to the Sentencing Guidelines, that the court would be required to set a sentence pursuant to such guidelines, and that the court would make findings as to the proper base offense level from the evidence presented. It was never a secret that the United States Attorney was treating the offense as attempted murder, and defendant's attorney stated to the district court at sentencing: "There is lurking in the background the allegation of an attempted murder."

Braxton admitted to the court:

I did shoot at the Marshals when my door was kicked in, but I was not trying to kill the Marshals, harm the Marshals. I was—it was all happening in such a fast instant that the only thing I could think of doing was defending my home and trying to keep them from taking me back to St. Elizabeth's.

At the change of plea hearing, appellant's attorney advised the court that he had explained the guidelines to Braxton and had explained that the court "could depart upward if you think he tried to murder the Marshals." At this same hearing the government made an oral factual presentation to the court in support of the charges against Braxton. This presentation included the firing of the two shots through the doorway while the Marshals were attempting to gain entrance, and it also included the statements of the defendant that he would kill the Marshals if they came inside and that he knew that they were Deputy United States Marshals.

Following this presentation of the facts, Braxton's attorney stated that the facts were accurate, but Braxton thought the two shots were fired almost simultaneously and not at different times. The court then addressed Braxton personally and asked him if the government could prove what it said had actually happened. Braxton answered in the affirmative.

At sentencing the district court found that these facts, which were not in dispute, supported a finding of attempted murder. This finding is subject to a clearly erroneous standard of review, *United States v. Daughtrey*, 874 F.2d 213 (4th Cir.1989), and we conclude that this finding is not clearly erroneous. However, appellant contends that under § 1B1.2(a) the district court cannot use this finding to determine the base offense level because there has not been "a stipulation specifically establishing a more serious offense than the offense of conviction." This issue is complicated by the statement made by the district judge at sentencing that the defendant

had not "stipulated" to attempted murder; however, the court went on to find that the facts as acknowledged by Braxton added up to the higher offense of attempted murder.

On the issue of base offense level, the court made the finding:

I am fully satisfied that under the circumstances of this case, and I won't get into the technicalities whether it's under 1B1.2 or 1B1.3, that I can consider all the conduct—relevant conduct in setting the offense level and making adjustments. And I realize, and there certainly is no indication, Mr. Cribari's made it absolutely clear throughout that, Mr. Braxton, on your behalf, there has been no stipulation to Attempted Murder and the record's clear on that. But the facts, as I understand them to be, as set forth and acknowledged at the guilty plea proceeding, and even if it's not acknowledged, as they are, I can consider them under 1B1.-3. One cannot, from a legal perspective, and not as a moralist, not as a theologian, not as anything else, from a legal perspective, those facts added up, in my judgment, to the—to a higher offense, and so therefore, I'm compelled to find an offense level twenty. I may say, and I won't allude to this again because it will just make the proceedings more complex, that if for some reason I was incorrect legally in making and considering those facts and setting the offense level, I would use them to depart under 1B1.4 up to the level where I am—within which I am sentencing. So whether it's deemed, whether I'm technically wrong in considering the facts in setting an offense level, I would say that I would use those same facts to depart to the extent that—that what I'm saying is a departure.

The—legally, I have no doubt that the three points should be added. The specific offense characteristics are not mentioned in the guidelines. I—here the fact that the statute is in this guideline seems to me that it's perfectly clear that the guidelines contemplate that where there is an assault on a Federal Officer, these three points be added, and I think legally, that's just as clear as it could be. So I am then at the level 23.

■ Although § 1B1.2 uses the word "stipulation" and the district judge stated that there was "no stipulation to attempted murder," we are persuaded that "stipulation" in § 1B1.2 is not used in a restrictive way so that only an agreement designated as a "stipulation" would comply with the guideline. As used in this section "stipulation" means an agreement as to the facts that specifically establishes a more serious offense than the offense of conviction. There is no requirement in the guidelines or in the commentary or application notes that this stipulation must be in writing. It is only necessary that the facts presented to the court establish a more serious crime and that the defendant agree to the statement of facts.

■ In the present case, Braxton agreed to the proffer of facts by the government in which he admitted that he fired two shots through the doorway at the marshals, that he said he would kill them if they came in, and that he threatened to kill any additional support personnel called to the scene, if they attempted to come into his apartment. It is the agreement to these facts that qualifies as a stipulation under § 1B1.2, and these facts clearly support the district court's finding of attempted murder. In *United States v. Correa-Vargas*, 860 F.2d 35, 39 (2d Cir.1988), there was no plea agreement with stipulated facts. The defendant entered a plea to use of a communication facility in commission of a drug offense but he did not contest the presentation of facts that showed that 20 kilos of cocaine were involved. The Second Circuit concluded that the sentencing court could consider this information under § 1B1.4 which allows the court to consider any information concerning the background, character and conduct of the defendant in departing from the guidelines, or under § 5K2.0, the policy statement on grounds for departing from the guidelines, or under § 1B1.2 as an offense more serious than the offense of conviction.

In the present case the judge used § 1B1.2, but held that if this was error, he was making the upward adjustment under § 1B1.4.[3]

We find that the district court's use of § 1B1.2 was correct on the present facts.

### IV

■ Appellant objects to the district court's adjustment under § 3A1.2 by a three-point increase in the base offense level because the appellant fired at federal law enforcement officers. This section provides for a three-level increase if: "(a) the victim was a law enforcement or corrections officer ... and the offense of conviction was motivated by such status." Braxton argues that under § 2A2.2, aggravated assault has a base offense level of 15, that he was charged under 18 U.S.C. § 111 of assaulting a federal official, and that to increase his level by three would be double counting. We find no merit to this position. We have concluded that the court was correct in using a base offense level of 20 because the agreed facts support a finding of attempted murder. The calculation of this level did not consider the status of the victim, but § 3A1.2 is applicable because the victims were law enforcement officers. It is not necessary that the law enforcement officer be a casualty to be considered a victim, if the defendant knew that the person was a law enforcement officer and assaulted such officer in a manner creating a substantial risk of serious bodily injury. Section 3A1.2(b). These sections fit the facts of the present case and the district judge did not err in his application of the guidelines and in adding three levels to the base offense.

Therefore, we affirm the district court in its use of a base offense level of 20 for attempted murder pursuant to § 1B1.2 and we approved the three-level increase under § 3A1.2 because the victims were law enforcement officers, but we reverse the de-

nial of a two-level reduction for acceptance of responsibility and remand for resentencing without any reference to or consideration of rehabilitation. We express no opinion as to whether a two-level reduction should be granted when this issue is reconsidered.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING.

SPROUSE, Circuit Judge, concurring in part and dissenting in part:

I concur in Part II of the opinion holding that rehabilitation is not a factor in the consideration of acceptance of responsibility. I respectfully dissent, however, from Part III of the opinion where my brothers hold that Braxton stipulated under a more serious offense thus permitting an enhancement under guideline section 1B1.2. In my view, "stipulation" as it is used in section 1B1.2(a) at least means an agreement between a defendant and the government.

---

**3.** Section 1B1.4. *Information To Be Used In Imposing Sentence (Selecting a Point Within the Guideline Range or Departing from the Guidelines).*

In determining the sentence to impose within the guideline range, or whether a departure

from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. *See* 18 U.S.C. § 3661.