UNITED STATES of America, Appellee,

v.

Stanley McCALL, Defendant–Appellant.

No. 1511, Docket 90–1074.

United States Court of Appeals,
Second Circuit.

Argued July 19, 1990.

Decided Sept. 28, 1990.

Henriette D. Hoffman, New York City (The Legal Aid Soc., New York City, of counsel), for defendant-appellant.

Jonny Frank, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D. N.Y., John Gleeson, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before WINTER, MAHONEY and WALKER, Circuit Judges.

WINTER, Circuit Judge:

Stanley McCall appeals from a sentence imposed after a guilty plea. He argues that the district court applied a Sentencing Guidelines section based on his "real conduct" rather than on the offense for which he was convicted. This objection was never presented to the district court. He also argues, again for the first time, that his sentencing under the Guidelines violates the ex post facto clause of the Constitution. We reach the first issue and agree that the district court should have determined the relevant Guidelines section on the basis of McCall's offense of conviction. We also reach and reject his ex post facto claim.

## BACKGROUND

Prior to his arrest, McCall was a member of a very violent narcotics ring organized and run by Delroy Edwards. McCall answered telephones and monitored security cameras on behalf of the ring. In addition to these duties, McCall became Edwards's "boy," which appears on this record to be street slang for a trusted assistant who shoots on command.

During 1987, McCall participated in four violent incidents at Edwards's direction and on behalf of the ring. On June 27, a worker from one of Edwards's drug "spots" reported being robbed. Edwards instructed McCall to go to the location and "shoot whoever was in the hallway." McCall thereafter fired sixteen rounds at people standing on the stairway inside the building. On July 3, McCall gave Edwards a gun with which Edwards shot David Moncrieffe as punishment for mismanaging a drug location in Philadelphia. Also in the summer of 1987, McCall went with Edwards to question one of Edwards's drug sellers about being "short of some money or something." Edwards shot the man in the leg, and McCall shot a woman in the doorway of the house to which the man tried to flee. Finally, on December 7, 1987, after Edwards had been shot by members of a rival drug organization, Edwards directed McCall to a particular location in Brooklyn and told him to "shoot anybody ... that look[s] Jamaican." While Edwards watched from a distance, McCall shot two people, leaving Rudolph Simms paralyzed from the waist down.

On December 11, 1987, McCall was arrested for possessing a firearm and thereafter entered into a plea agreement with the government. McCall agreed to plead guilty to a one-count information charging him with committing violent crimes in aid of racketeering activity, 18 U.S.C. § 1959 (1988). The underlying crime charged as being in aid of the racketeering activity was "assault with a dangerous weapon." 18 U.S.C. § 1959(a)(3).[1] He also agreed to admit to the court his participation in drug distribution and in the four shootings charged in the information. McCall promised to cooperate fully in the investigation and prosecution of crimes committed by members of the Edwards drug organization. In return, the government agreed to inform the court of his cooperation if it

---

1. The information to which McCall pleaded guilty charged him with committing and aiding and abetting violent crimes in aid of racketeering activity, 18 U.S.C. §§ 1952B(a)(3) and 2.

Section 1952B has been renumbered as Section 1959, and we will refer to it as Section 1959 throughout this opinion.

determined that McCall had made a good faith effort to provide substantial assistance to law enforcement officials. The plea agreement explicitly contemplated that McCall would be sentenced under the Sentencing Guidelines. On May 2, 1988, McCall pleaded guilty to the information. At his plea allocution, McCall described his role in the four violent incidents.[2]

McCall testified for the government at Edwards's trial, at which Edwards was found guilty on forty-two counts involving a wide variety of serious crimes. In a letter to the district court, the government described McCall's assistance to the Edwards prosecution as "invaluable" and "crucial." Moreover, the letter indicated that "[McCall's] cooperation was the catalyst for the investigation [and] led to the arrest and eventual cooperation of many of the other accomplice witnesses."

On November 21, 1989, when his case was first called for sentencing, McCall moved to have his Guidelines range based on his possession of a firearm, the charge on which he had been arrested. The district court requested memoranda on the issue and adjourned the hearing. In the course of preparing its response to McCall's motion, the government discovered that, because of an amendment to the Guidelines, the Guidelines section selected by the Probation Department was no longer applicable to McCall's offense. The Probation Department thereafter obtained additional information concerning McCall's conduct and applied Section 2A2.1, assault with intent to commit murder, to three of the assaults charged in the information. It applied Section 2A2.2, aggravated assault, to the shooting of David Moncrieffe. After considering the specific offense characteristics and adjusting for multiple offenses and acceptance of responsibility, the Probation Department calculated a total offense level of 33 and a criminal history category of II. The resulting Guidelines range was 151–188 months.

On January 16, 1990, the district court reconvened the sentencing hearing. Consistent with the Probation Department report, the court determined the applicable Guidelines range to be 151–188 months. The court first ruled that the Guidelines section for assault with intent to commit murder, U.S.S.G. § 2A2.1, should apply to three of the four assaults, based on his finding that McCall had acted with a "depraved indifference to human life." Second, the court determined that a two-level upward adjustment for payment was appropriate. See id. § 2A2.1(b)(4). Third, the court declined to make a two-level upward adjustment for more than minimal planning. See id. § 2A2.1(b)(1). Fourth, the court determined that a prior disorderly conduct conviction was properly excluded in calculating McCall's criminal history category. Finally, the court rejected McCall's contention that he should be sentenced solely on the offense of firearms possession.

The court sentenced McCall to a term of 108 months imprisonment to be followed by three years of supervised release. This nine-year sentence represented a forty-three month downward departure from the minimum of what had been determined to be the applicable Guidelines range based on McCall's substantial assistance to the authorities. McCall appeals from this sentence.

## DISCUSSION

McCall's principal argument on appeal is that the district court should have applied the Guidelines section for the offense to which he pleaded guilty—aggravated assault (in aid of racketeering)—rather than the section for his "real conduct"—determined by the court to be assault with intent to commit murder. This argument was never presented to the district court. He also argues, again for the first time, that his sentencing under the Guidelines was an

---

2. Sometime after his plea, the government discovered that McCall had lied about being present at a shooting in March 1987. A second plea agreement ensued, pursuant to which McCall agreed to plead guilty to two counts of making false statements to a federal officer, 18 U.S.C. § 1001. He was sentenced to concurrent four-month sentences on these charges. McCall has not appealed from that conviction and sentence.

ex post facto application of the statute. We consider each of these arguments in turn.

■ We believe we must reach the issue of which Guidelines section is applicable. It is true that this argument made on appeal was not made in the district court. It is also true that if the wrong section was applied then the error is not "plain" in the sense of being obvious or apparent. The lack of obviousness, however, is the result of the prolixity of the Guidelines and the unfamiliarity of counsel and the judiciary with their application. If we insist on taking "plain" literally, numerous fundamental errors would go unredressed. We believe that basing a sentence on the wrong Guidelines section is a fundamental error "affect[ing] substantial rights." Fed.R. Crim.P. 52(b). Here it involves the difference between a range of 87 to 108 months and the selected range of 151 to 188 months. We conclude that where claims of major errors in the application of the Guidelines are presented for the first time on appeal, we should, during the infancy of the Guidelines, reach the merits at least so long as the failure to raise an issue was not a calculated decision. This policy also expedites appellate review of disputed issues involving application of the Guidelines.[3]

■ We turn to the merits. McCall contends that the district court erred when it determined the applicable Guidelines section based on its own finding that he had committed three of the charged assaults with "depraved indifference to human life" and therefore with an intent to commit murder. McCall argues that the Guidelines required the district judge to select the Guidelines section based on his offense of conviction, aggravated assault, rather than the section based on his "real conduct." We agree.

Under the Application Instructions, the sentencing court ordinarily determines "the applicable offense guideline section from Chapter Two," U.S.S.G. § 1B1.1(a), by locating the offense of conviction in the Statutory Index. *See generally* Wilkins & Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 41 S.C.L.Rev. 495, 497–503 (1990) (explaining the role of the offense of conviction in determining applicable Guidelines section). In this case, McCall pleaded guilty to a one-count information charging him with committing violent crimes in aid of racketeering activity, 18 U.S.C. § 1959. The Statutory Index lists Guidelines Section 2E1.3 for 18 U.S.C. § 1959. *See* U.S. S.G. App. A at A.15. Section 2E1.3 instructs the court to assign the greater of offense level 12 or "the offense level applicable to the underlying crime or racketeering activity." The underlying crime charged in the information was "assault with a dangerous weapon," 18 U.S.C. § 1959(a)(3). The Guidelines section applicable to assault with a dangerous weapon is Section 2A2.2, aggravated assault.

The government contends that "[t]wo separate offense guideline sections, [Sections 2A2.1 and 2A2.2] cover the criminal conduct charged in the information." That is wrong. The information does not charge McCall with the essential element of intent to commit murder. The district court found as a fact at the sentencing hearing that McCall's acts showed a "depraved indifference to human life, and therefore an intent to murder." That fact is irrelevant

---

**3.** The government also argues that we should not reach the merits because the district court identified the offense of conviction/real conduct issue as irrelevant to the ultimate sentence. *See United States v. Bermingham*, 855 F.2d 925, 935 (2d Cir.1988). In *Bermingham*, we held that Guidelines disputes "need not be resolved where the sentence falls within either of two arguably applicable guideline ranges and the same sentence would have been imposed under either guideline range." *Id.* at 931.

However, the issue McCall presses on appeal was never presented to the district court, and

we cannot say with confidence that application of the correct Guidelines range would not have affected the length of McCall's sentence. The district court indicated a desire to depart downward on the basis of the defendant's substantial cooperation. If aggravated assault determined the Guidelines range, that statement of intent cannot be reconciled with a sentence of 108 months, the highest sentence within the range for aggravated assault in the factual context of this case.

to selecting the applicable Guidelines section, however, because that section must be determined by the offense of conviction. See U.S.S.G. § 1B1.2(a) (as amended Nov. 1, 1989) (select Guidelines section "most applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)").

The government also mistakenly relies on the introductory comments to the Statutory Index which provide that "[i]f, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted." U.S.S.G. App. A at A.1. The district court did not find that this was an "atypical case." Even if it had, it would still have been limited by the "nature of the offense conduct charged in the count of which [McCall] was convicted." A plausible reading of this clause would permit a court to consider the implications of facts recited in the information but additional to the specific crime charged. However, the facts alleged in the information charging McCall establish neither "atypical" circumstances nor a sufficiently severe "nature of offense conduct" to justify selecting Section 2A2.1.

Moreover, McCall agreed to plead guilty to assault with a dangerous weapon pursuant to a written plea agreement with the government. The reasonable expectations of the parties to a plea agreement cannot be fulfilled unless the Guidelines section is determined solely on the basis of the offense of conviction, facts alleged in the information or indictment, and formal stipulations to facts establishing a more severe offense. If the government desired to have McCall sentenced under another Guidelines section, it could have sought an appropriate stipulation pursuant to a proviso to Section 1B1.2. That proviso establishes a mechanism for the government to extract a stipulation to conduct more serious than the offense of conviction in order to apply the Guidelines section for the more serious offense while retaining the statutory maximum sentence for the offense of conviction. See U.S.S.G. § 1B1.2(a) ("[I]n the case of conviction by a plea of guilty ... containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline section in Chapter Two most applicable to the stipulated offense."). In this case, the plea agreement did not contain such a stipulation. The agreement refers only to stipulations to factors that will be used "to calculate the defendant's adjusted offense level." Because the choice between Guidelines sections in this case determines the base (rather than adjusted) offense level, this clause is inapplicable.

Our decision in *United States v. Guerrero*, 863 F.2d 245 (2d Cir.1988), also forecloses any attempt to infer such a stipulation from later admissions on the part of McCall. *Guerrero* held that the government must extract any stipulations during the plea negotiation. *See id.* at 248. We rejected the attempt to base the offense level determination on a stipulation entered into before sentencing but after the guilty plea. However, we approved the use of "relevant conduct" evidence to select the applicable offense level within a Guidelines section that included multiple offense levels. *See id.* at 248–50. We ultimately upheld Guerrero's sentence on the ground that it was reasonable for the judge to depart upward in light of the large quantity of narcotics involved in the transaction that Guerrero had facilitated. *See id.* at 250.

In the instant matter, the applicable Guidelines section specifies only one offense level, and the sentencing judge expressly did not intend to depart upward from the Guidelines range. To the contrary, he expressly stated that he was departing downwards. Contrary to the government's contention, McCall's agreement to describe the four assaults at the time of his plea allocution does not constitute a stipulation to more severe offense conduct. The plea agreement merely contemplated that the information concerning these assaults would be available to the

court for the purposes of evaluating the specific offense characteristics and evidence of relevant conduct. McCall's base offense level was in fact increased by eleven levels for discharge of a firearm, life-threatening bodily injury, and receiving payment. U.S.S.G. § 2A2.1(b)(2)(A), (3)(C), (4).[4]

We also consider McCall's argument that his sentencing under the Guidelines is an ex post facto application of the Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat. 1837, 1987. Although this argument was not raised below, if an ex post facto violation occurred, it might be plain error or a "defect[ ] affect[ing] substantial rights." Fed.R.Crim.P. 52(b).

The one-count information to which McCall pleaded guilty charged him with committing and aiding and abetting four "violent crimes in aid of racketeering activity," 18 U.S.C. § 1959. Although three of the charged assaults took place prior to November 1, 1987, the effective date of the Sentencing Reform Act, one assault occurred on December 7, 1987. McCall contends that since the bulk of his criminal conduct occurred before November 1, 1987, and since his offense was not a "continuing crime," he should have been sentenced under pre-Guidelines law.

We have held that the Guidelines apply to so-called "straddle offenses"—continuing offenses begun before November 1, 1987, and continuing after that date—without offending the constitutional prohibition against ex post facto laws. *See United States v. Story*, 891 F.2d 988, 991–96 (2d Cir.1989). McCall's criminal conduct unquestionably continued after November 1, 1987, and we must, therefore, determine whether the offense of violent crimes in aid of racketeering activity constitutes a con-

tinuing offense. We conclude that on the facts of the instant case it does.

The information to which McCall pleaded guilty alleged that he had committed four assaults "for the purpose of maintaining and increasing his position in an enterprise engaged in racketeering activity." Moreover, this allegation was a statutory element of the charged offense. *See* 18 U.S.C. § 1959(a) (requiring violent crimes charged under that section to have been committed in consideration for payment from, or to maintain or increase position in, an enterprise engaged in racketeering activity). McCall committed, or aided and abetted, all four shootings while he was working in the Edwards drug ring. His admissions during his plea allocution amply supported the conclusion that he had committed these crimes "for the purpose of ... maintaining or increasing position," *id.*, in the Edwards organization. Indeed, the district judge could not have accepted McCall's guilty plea unless the requisite connection to the drug enterprise had been established. There can be no doubt on the record before us that the Edwards drug organization was a continuing criminal enterprise. Furthermore, McCall committed one of the charged assaults after November 1, 1987. Accordingly, we conclude that McCall's criminal conduct was both a continuing offense and a straddle crime as those terms were used in *Story*. The district court, therefore, did not err by sentencing McCall under the Guidelines.

Reversed and remanded for resentencing.

---

4. *United States v. Braxton*, 903 F.2d 292 (4th Cir.1990), held that, in the absence of a written plea agreement, a defendant's agreement at his plea allocution to facts establishing a more serious offense allowed the court to select the more serious Guidelines section. *Braxton* concluded that an agreement to facts specifically establishing a more serious offense constituted a stipulation as the term is used in the Guidelines. *See id.* at 298. It further found no requirement that

the stipulation be in writing. *See id.* Without expressing any opinion as to whether a Section 1B1.2(a) stipulation must be in writing, we note that our decision in *Guerrero* requires that any stipulation be a part of the plea agreement, whether oral or written. *See* 863 F.2d at 248. No provision of McCall's plea agreement could be fairly construed as a stipulation to the offense of assault with intent to commit murder.