**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael William GARDNER,**
**Defendant–Appellant.**

**No. 90–2244.**

United States Court of Appeals,
Tenth Circuit.

July 24, 1991.

Submitted on the briefs: *

William L. Lutz, U.S. Atty., and Robert J. Baca, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff-appellee.

Alonzo J. Padilla, Albuquerque, N.M., for defendant-appellant.

---

\* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Before ANDERSON, BARRETT and TACHA, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Michael William Gardner appeals his sentence of eighty-seven months imprisonment imposed pursuant to the United States Sentencing Guidelines relating to bank robbery, after Gardner pled guilty to the crime of bank larceny. U.S.S.G. § 1B1.2(a) provides that "in the case of conviction by a plea of guilty ... containing a stipulation that specifically established a more serious offense than the offense of conviction," the court must apply "the offense guideline ... most applicable to the stipulated offense." Gardner contends that his guilty plea to bank larceny, including the "Memorandum of Understanding Regarding Guilty Plea" did not contain a written stipulation establishing the more serious offense facts of bank robbery, and that a written stipulation as part of the plea agreement is required for § 1B1.2 to apply. The government contends that Gardner expressly agreed to a presentation of facts establishing the more serious offense of bank robbery, and an application of the Sentencing Guidelines relating to that offense, as part of his plea agreement. We agree, and affirm the sentence imposed by the district court in this case.

Mr. Gardner was indicted, together with Clifton Mark Wiggins and Larry Walton, on charges of bank robbery and aiding and abetting, in violation of 18 U.S.C. §§ 2113(a) and (d), and § 2. Subsequently, he entered into negotiations with the government with respect to a guilty plea. The negotiations centered on his possible status as a career offender and the effect of the status on potential sentences under the Sentencing Guidelines. If he was not classed as a career offender he was willing to plead guilty to bank robbery. If he was classed as a career offender, he was willing to plead guilty to bank larceny, but on facts supporting a charge of bank robbery. His aim, to which the government agreed, was to avoid a sentence exceeding ten years. This approach led to some minor confusion in subsequent proceedings, but the underlying agreement was nevertheless made clear on the record.

The negotiations just outlined resulted in a written "Memorandum of Understanding Regarding Guilty Plea" agreed to by Gardner and the government. This two-page memorandum consisted of five numbered paragraphs in which Gardner agreed to plead guilty to bank larceny, upon which the government would move for dismissal of the indictment for bank robbery. The government expressly declined to be bound regarding a sentencing recommendation, and reserved the right to "make known to the probation service of the Court, for inclusion in the presentence report ... any information which the Government believes may be helpful to the Court." R. Vol. I, "Memorandum of Understanding Regarding Guilty Plea" at par. 3(c).

At the hearing on Gardner's guilty plea, the district court dwelt on the crime of bank larceny and the ten year maximum punishment for that crime. However, the court then elicited the following crucial information from the government to which Gardner, who was under oath, agreed:

THE COURT: What will the government be able to prove if we went to trial in this matter?

MR. BACA: Should this matter have gone to trial, the United States would show by competent evidence that on November 13th, a little before eleven o'clock in the morning, two white males entered the United New Mexico Bank, 9700 Montgomery here in Albuquerque, and one of the males handed the victim teller a note which said that the guy behind me has a gun, throw the money on the counter and nobody will get hurt. She put the money on the counter and they left the bank.

Later on that evening a vehicle was stopped, which had been identified as being used in the bank robbery, and Mr. Gardner was in the vehicle, and on him were two bait bills. A photo spread was shown to the victim teller who identified Mr. Gardner as one of the persons who handed her the note asking for the money.

Q. Mr. Gardner, how do you plead to the information, guilty or not guilty?

A. I plead guilty, your Honor.

Q. Tell me in your own words what it is you understand you are pleading guilty to.

A. That I unlawfully took money that didn't belong to me. I'm guilty of that.

Q. Basically what the United States Attorney has said?

A. Yes, sir.

R.Supp. Vol. I at 12–13.

The foregoing facts—which establish the offense of bank robbery—were subsequently recited in the presentence report. The report also referred to the cited exchange in open court as a stipulation which would authorize the court to impose a sentence within the Guidelines relating to bank robbery. Gardner objected. He stated in written objections to the presentence report that the written plea agreement (the "Memorandum of Understanding") did not contain any facts regarding the crime, and that the recitation of facts in open court during the plea hearing did not constitute a stipulation within the meaning of § 2B1.2(a). He argued that U.S.S.G. 6B1.4 governs stipulations, requires a degree of formalism and states, in commentary, that "stipulations ordinarily should be in writing." R. Vol. I, "Objection to the Presentence Report," at 4.

The government's response to Gardner's objections outlined the plea negotiations and stated "an agreement was reached whereby the United States at the time of the plea would state the elements of bank robbery, while Gardner would be allowed to plead to bank larceny." R. Vol. I, "Response to Objections to Presentence Report," at 2. The government listed Gardner's status as a possible career offender as the reason for this tactic. The government referred to the facts to which Gardner agreed at the plea hearing, and expressed a willingness to have the court allow Gardner to withdraw his guilty plea if he still disagreed with the facts and content of the underlying agreement. The government also attached letters from Gardner's counsel confirming the nature of the agreement.

All these arguments were restated and reviewed at the sentencing hearing. Among others, the following exchange occurred:

MR. PADILLA [Gardner's Counsel]:

\* \* \* \* \* \*

In this case I think *Mr. Gardner probably clearly acknowledged perhaps those facts, but in terms of what he plead to it was still bank larceny and there was no stipulation.* And perhaps it's a matter of how you interpret a stipulation, whether it should be given a very strict interpretation, that is something that has to be in writing and proved by the parties, or perhaps what we find in this case. A lot of it may have to do with semantics and a stipulation and just something that might be applicable to figure out the guidelines, your Honor.

THE COURT: What do you have to say, Mr. Baca?

MR. BACA: Your Honor, the reason that happened was because we both understood that he would be a career offender and he would be sentenced under bank larceny. If he wasn't, it would give bank robbery facts. In case he wasn't a career offender he would be sentenced to bank larceny [sic] like the other two codefendants. That was the whole agreement we had, my understanding of the agreement, and I thought that is what he understood based on the correspondence I gave the Court as far as his record. And if there is confusion I would rather have him withdraw his plea and try him whenever the Court wants, but I don't think he should be allowed to be sentenced on bank larceny when the two defendants got bank robbery and had lesser rap sheets than he had. And that was the entire agreement. I think I gave it to the court prior to the plea being taken. We asked the Court to take a conditional plea.

MR. PADILLA: Your Honor, *I don't want to dispute that.* There was correspondence going back and forth between—I will say my office and Mr.

Baca, because I think one of the letters was from me and one might have been from Susan Weeks, my associate, and conversations back and forth. And I think the initial concern was the fact that he would be classified as a career offender, if he either went to trial and was convicted of bank robbery or if he plead guilty to bank robbery, and that was the concern at that time.

THE COURT: Well, under bank larceny he can get up to ten years. Under bank robbery he can get up to 20 years. I intend to sentence him to less than ten years. I don't know whether that makes any difference or not.

MR. BACA: The agreement was at one time, I recall, as long as he stayed under the cap of ten years we had an agreement. That was his concern.

THE COURT: In his letter—that is what Susan Weeks' letter says.

MR. PADILLA: *I am not going to deny that.* That was the conversations that took place and the letters that went back and forth. There is still a question about the stipulation. It may not make any difference with regard to the guidelines, but I think Mr. Gardner's concern when he saw the presentence report, because I took it up to Santa Fe for him to review it, is he saw the word stipulation and he says, wait a minute, I don't remember stipulating to—

THE COURT: I don't quite see that it is an oral stipulation. I guess in a sense you could call it that, but what it is is you just worked out a deal and *you can't change the facts. In other words, it's bank robbery and not bank larceny.* But I am going to find against you on your objections.

However, it does bother me, and if your client wants to withdraw his plea and go to trial, as the United States says, I would probably look favorably on that.

MR. PADILLA: Your Honor, *we have discussed that and it is his feeling that he will go with what the court rules,* but that he does not want to withdraw his plea, your Honor.

THE COURT: *All right. I will rule against you on all of your objections. There is no need for an evidentiary hearing.* They are all questions of law.

R.Supp. Vol. II at 20–23 (emphasis added).[1] The objections in question in the foregoing exchange went to the proviso in § 1B1.2(a). It appears to us that Gardner's counsel in effect either waived the objections or agreed with the court's interpretation and disposition.

## DISCUSSION

We apply a de novo standard of review to questions of law relating to interpretations of the Sentencing Guidelines, and a clearly erroneous standard to factual determinations made by the district court. 18 U.S.C. § 3742(e). *See United States v. Shewmaker,* 936 F.2d 1124 (10th Cir.1991); *United States v. Banashefski,* 928 F.2d 349, 351 (10th Cir.1991) (citing *United States v. Smith,* 900 F.2d 1442, 1445 (10th Cir.1990) and *United States v. Kirk,* 894 F.2d 1162, 1163 (10th Cir.1990)); *United States v. Rutter,* 897 F.2d 1558, 1560 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990); *United States v. Beaulieu,* 893 F.2d 1177, 1181–82 (10th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990).

Here, the district court found that the facts of record, that is, the admission in the plea hearing, established "bank robbery and not bank larceny." R.Supp. Vol. II at 23. That finding is not clearly erroneous. The question is whether Gardner's admis-

---

1. At the hearing on Gardner's plea of guilty, his counsel, Mr. Padilla, confirmed the reason for a plea on larceny, but with bank robbery facts:

It was an interesting type of situation where we did, or I had my client sign what the probation authorities call a Form 13 which allows a report to be prepared prior to the plea, and that was why we were going back and forth in terms of a plea, bank larceny or bank robbery, because it was a question about whether or not he was a career offender. So some of the preliminaries have been already done. I wanted to bring that to the court's attention.

R.Supp. Vol. I at 14–15.

sion constituted a "stipulation" for purposes of U.S.S.G. § 1B1.2(a).

Section 1B1.2(a) provides:

Determine the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction (*i.e.*, the offense conduct charged in the count of indictment or information of which the defendant was convicted). *Provided,* however, in the case of conviction by a plea of guilty or *nolo contendere* containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline section in Chapter Two most applicable to the stipulated offense.

United States Sentencing Commission, *Guidelines Manual* (Nov.1990).[2]

The circuits dispute the nature of the "stipulation" required in § 1B1.2(a). *Compare United States v. Braxton,* 903 F.2d 292, 298 (4th Cir.1990) (holding that an oral stipulation at a plea hearing is sufficient), *rev'd on other grounds, with United States v. McCall,* 915 F.2d 811, 816, n. 4 (2nd Cir.1990) (holding that stipulation must be part of a plea agreement but passing on the question whether or not it must be written) *and United States v. Rutter,* 897 F.2d at 1561 (stipulation must be part of a plea agreement between government and defendant). The Supreme Court recently reviewed the decision of the Fourth Circuit in *United States v. Braxton,* but expressly declined to clarify the dispute regarding the meaning of "stipulation" under § 1B1.2(a) on the grounds that the United States Sentencing Commission had "undertaken a proceeding that will eliminate circuit conflict over the meaning of § 1B1.2...." *Braxton v. United States,* — U.S. —, 111 S.Ct. 1854, 114 L.Ed.2d 385. To date, the commission has neither submitted any proposed amendment of § 1B1.2(a) to Congress nor issued any other clarification, and we have no way of knowing when and if such a clarification will issue.

However, applying even the most restrictive circuit's interpretation of the proviso in § 1B1.2(a) would not alter the result in this case. No circuit has explicitly held that the stipulation under § 1B1.2(a) must be written, and we are confident that application of the proviso does not turn on such a technical use of the word "stipulation." The essence of a stipulation is an agreement. Thus, as we have held, application of the proviso turns on whether there was a knowing agreement by the defendant, as part of a plea bargain, that facts supporting a more serious offense occurred and could be presented to the court for application of guidelines relating to the more serious offense. *United States v. Rutter,* 897 F.2d at 1561; *see also United States v. McCall,* 915 F.2d at 815. That is just what happened here. When Gardner's objection to the presentence report was aired during the sentencing hearing, the district court not only found that bank robbery facts had been agreed to in open court at the time of the hearing on Gardner's plea agreement, the court also offered to let Gardner withdraw his guilty plea and go to trial if he disputed the existence of the agreement with respect to the more serious offense. At that time Gardner's counsel stated on the record: "We have discussed that and it his feeling that he will go with what the court rules, but that he does not want to withdraw his plea, your Honor." R.Supp. Vol. II at 23. The court then stated: "All right, I will rule against you on all of your objections. There is no need for an evidentiary hearing." *Id.* It could not be more clear that Gardner, through his counsel, assented to the applicability of the proviso under § 1B1.2(a) in the sentencing proceedings. The district court gave him every opportunity to withdraw the plea agreement if any confusion or doubt remained on that point, and the offer was rejected.

Under the circumstances, this case satisfies every circuit's definition of "stipulation" under § 1B1.2(a). It was a " 'quid

---

**2.** The Commentary, Application Note 1, makes clear that the sentence on the more serious offense established by the stipulated facts is limited to the maximum authorized by the statute under which the defendant is convicted. In this case, that maximum was ten years, as contemplated by the parties in their plea negotiations.

592

pro quo' for the Government's agreement not to charge a higher offense." *Braxton v. United States* —— U.S. ——, 111 S.Ct. 1854. At the critical point of sentencing, Gardner knew exactly what the provisions of his plea negotiation with the government entailed and he received the benefit of his bargain at that time, i.e., a ten-year cap on the potential sentence. Had he withdrawn his plea, the government would have proceeded on the bank robbery charge and Gardner would have been exposed to both a more serious conviction and a much higher sentence.

Accordingly, we hold that the district court properly applied the Sentencing Guidelines in imposing sentence on Gardner, and the sentence is AFFIRMED.